1  Eugene P. Ramirez (State Bar No. 134865)
     *eugene.ramirez@manningkass.com*
2  Kayleigh Andersen (State Bar No. 306442)
     *kayleigh.andersen@manningkass.com*
3  **MANNING & KASS**
   **ELLROD, RAMIREZ, TRESTER LLP**
4  801 S. Figueroa St, 15th Floor,
   Los Angeles, California 90017-3012
5  Telephone: (213) 624-6900
   Facsimile: (213) 624-6999
6
7  Attorneys for Defendants, COUNTY OF
   SAN BERNARDINO and JUSTIN
   LOPEZ
8

9                    **UNITED STATES DISTRICT COURT**

10                  **CENTRAL DISTRICT OF CALIFORNIA**

11

12  A.H. and H.H., in each case a minor, by     Case No. 5:23-CV-01028 JGB-SHK
    and through their guardian ad litem
13  Crystal Hanson, individually and as         *[Honorable Sunshine Jesus G. Bernal,*
    successor in interest to Shane Holland,     *Magistrate Judge, Shashi H.*
14  deceased; C.H., a minor, by and through     *Kewalramani]*
    her guardian ad litem, Reymi Updike;
15  individually and as successor in interest
    to Shane Holland, deceased, and            **NOTICE OF MOTION AND**
16  PATRICIA HOLLAND, individually,            **MOTION BY DEFENDANTS FOR**
                                                **SUMMARY JUDGMENT;**
17              Plaintiffs,                     **MEMORANDUM OF POINTS AND**
                                                **AUTHORITIES**
18         v.

19  COUNTY OF SAN BERNARDINO;                  *Filed concurrently with:*
    JUSTIN LOPEZ, and DOES 1-10,               *1.  Statement of Uncontroverted Facts;*
20  Inclusive,                                 *2.  Declaration of Kayleigh Andersen;*
                                                *3.  Declaration of Sergeant Anthony*
21              Defendants.                     *    Scalise; and*
                                                *4.  [Proposed] Order*
22

23                                             Date:     September 9, 2024
                                               Time:     9:00 a.m.
24                                             Crtrm.:   Courtroom 1

25
                                               *Action Filed:      06/02/2023*
26

27

28

                                        1

**TO THE COURT, PLAINTIFFS, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 9, 2024, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 1 of the above-captioned Court, located at 3470 Twelfth Street, Riverside, California 92501, defendants County of San Bernardino ("County") and Deputy Justin Lopez ("Deputy Lopez") (collectively "Defendants") will move this Court for an order granting summary judgment in their favor based on plaintiffs A.H. and H.H., in each case a minor, by and through their guardian ad litem Crystal Hanson, individually and as successor in interest to Shane Holland, deceased; C.H., a minor, by and through her guardian ad litem, Reymi Updike; individually and as successor in interest to Shane Holland, deceased, and PATRICIA HOLLAND, individually ("plaintiffs") Complaint filed on June 2, 2023, [Dkt. 1].

This motion is based upon the grounds that there are no triable issues of material fact and that the moving Defendants are entitled to judgment as a matter of law as follows:

1. Defendant Deputy Lopez is entitled to judgment on plaintiffs' second cause of action for excessive force under 42 U.S.C. § 1983 because under the uncontroverted facts, Deputy Lopez' use of force was objectively reasonable under the totality of the circumstances. Further, there is no evidence that Deputy Lopez violated Holland's clearly established constitutional rights at the time of the incident, which entitles him to qualified immunity.

2. Defendant Deputy Lopez is entitled to judgment on plaintiffs' fourth cause of action for substantive due process/interference with familial relationship under 42 U.S.C. § 1983 because there is no evidence that Deputy Lopez acted with deliberate indifference and/or a purpose to harm unrelated to legitimate law enforcement objectives. Further, there is no evidence that Deputy Lopez violated Holland's clearly established constitutional rights at the time of the incident, which

1 entitles him to qualified immunity.

2     3.    Defendant Deputy Lopez is entitled to judgment on plaintiffs' seventh

3 cause of action for battery - wrongful death and plaintiffs' eighth cause of action for

4 negligence - wrongful death because Deputy Lopez used only objectively reasonable

5 force under the totality of the circumstances.  For the same reasons no constitutional

6 violations occurred, no violations of California law were committed.

7     4.    Defendant Deputy Lopez is entitled to judgment on plaintiffs' ninth

8 cause of action for violation of the Bane Act because there is no evidence that Deputy

9 Lopez acted with the specific intent to violate Holland's right to be free from an

10 unreasonable seizure.

11     5.    Defendant County of San Bernardino is entitled to judgment for each of

12 plaintiffs' state law claims, as Deputy Lopez is not liable and there is no basis for

13 respondeat superior liability against the County.  Cal. Gov. Code § 815.2(a).

14     6.    Defendant Deputy Lopez is entitled to judgment on plaintiffs' claim for

15 punitive damages because there is no evidence that he acted with malice, oppression,

16 or reckless disregard for Holland's rights during the incident.

17     In accordance with Local Rule 7-3, prior to the filing of the motion, on July 17,

18 2024, Defendants' counsel sent plaintiffs' counsel a comprehensive meet and confer

19 letter inviting further discussions regarding the dispositive issues presented in this

20 motion.  [*See* Andersen Decl., ¶ 9, Ex. H.]

21     The parties meet and confer discussions began on July 24, 2024 via email and

22 written correspondence and continued by phone call on August 2, 2024.   [*See*

23 Andersen Decl., ¶ 10.]

24     Plaintiffs' counsel agreed to dismiss the following claims asserted in their

25 operative complaint: (1) Claim 1, Unreasonable Detention and Arrest (42 U.S.C. §

26 1983); (2) Claim 3, Denial of Medical Care (42 U.S.C. § 1983); (3) Claim 5,

27 Municipal Liability – Inadequate Training (42 U.S.C. § 1983); (4) Claim 6, Municipal

28 Liability –Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983).  [*See*

MANNING | KASS

1   Andersen Decl., ¶ 11.]

2       However, the parties were unable to reach an agreement to resolve the
3   remaining claims informally.  [*See* Andersen Decl., ¶ 12.]

4       Defendants' motion is based on this notice of motion, the attached
5   memorandum of points and authorities, statement of undisputed facts, and the
6   declarations of Kayleigh Andersen and Sergeant Scalise filed concurrently herewith,
7   all of the pleadings, files, and records in this proceeding, all other matters of which
8   the Court may take judicial notice, and any argument or evidence that may be
9   presented to or considered by the Court prior to its ruling.

10

11  DATED:  August 12, 2024        **MANNING & KASS**
                                   **ELLROD, RAMIREZ, TRESTER LLP**
12

13

14                        By:     /s/ *Kayleigh Andersen*
15                                Eugene P. Ramirez
                                  Kayleigh Andersen
16                                Attorneys for Defendants, COUNTY OF
                                  SAN BERNARDINO and JUSTIN LOPEZ
17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................ 10

II.    STATEMENT OF UNCONTROVERTED FACTS ...................................... 10

III.   SUMMARY JUDGMENT STANDARD .................................................. 12

IV.    ARGUMENT ................................................................................... 13

    A.   Deputy Lopez Used Objectively Reasonable Force Under the Totality of the Circumstances. .............................................. 13

        1.   Holland posed an immediate threat to Deputy Lopez and the public.................................................................. 14

        2.   Holland ignored the Deputy Lopez' commands, and escalated the incident.............................................. 16

        3.   Case law supports the Deputy Lopez' actions........................... 17

    B.   Plaintiffs' Fourth Claim for Substantive Due Process/Interference with Familial Relationship Fails. ...................... 18

    C.   Deputy Lopez is Entitled to Qualified Immunity. ................................ 19

    D.   Plaintiffs' Redundant Claims for Battery, Negligence, and Violation of the Bane Act Fail. ........................................... 22

        1.   Pre Force Negligence Claim...................................... 23

        2.   Violation of the Bane Act ....................................... 24

    E.   The County Cannot be Liable For Any of Plaintiffs' State Law Claims. ........................................................... 25

    F.   Plaintiffs' Request for Punitive Damages Lacks Merit. ....................... 25

V.     CONCLUSION ................................................................................. 26

**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Page**

## CASES

*A. D. v. State of Cal. Highway Patrol*
   712 F.3d 446 (9th Cir. 2012)................................................................18

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ...............................................................12, 13

*Anderson v. Russell*
   247 F.3d 125 (4th Cir. 2001) .................................................15, 20

*Archibald v. Cty. of San Bernardino*
   2018 U.S. Dist. LEXIS 171243 (C.D. Cal. Oct. 2, 2018) ............22

*Brown v. Ransweiler*
   171 Cal. App. 4th 516 (2009) ....................................................22

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ..................................................................12

*Cruz v. City of Anaheim*
   765 F.3d 1076 (9th Cir. 2014) ...................................................20

*Dang v. Cross*
   422 F.3d 800 (9th Cir. 2005) .....................................................25

*Dudley v. Eden*
   260 F.3d 722 (6th Cir.2001) .......................................................17

*Edson v. City of Anaheim*
   63 Cal. App. 4th 1269 (1998)......................................................22

*Fewell v. California*
   2017 WL 6043080 (C.D. Cal. Apr. 11, 2017)............................18

*George v. Morris*
   736 F.3d 829 (9th Cir. 2013) ......................................................14

*Gonzalez v. City of Anaheim*
   747 F.3d 789 (9th Cir. 2014) ...............................................18, 20

*Graham v. Connor*
   490 U.S. 386 (1989) .........................................................13, 22, 23

*Hansen v. Black*
   885 F.2d 642 (9th Cir. 1989)......................................................13

**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT**

*Hayes v. County of San Diego*
57 Cal. 4th 622 (2013).................................................................................22, 23

*Hayes v. County of San Diego*
736 F.3d 1223 (9th Cir. 2013).............................................................................20

*Hernandez v. City of Pomona*
46 Cal. 4th 501 (2009)........................................................................................23

*Jean-Baptiste v. Gutierrez*
627 F.3d 816 (11th Cir. 2010).............................................................................20

*Kisela v. Hughes*
584 U.S. 100 (2018)......................................................................................17, 20

*Labensky v. Cornwell*
763 F. Supp. 2d 921 (S.D. Ohio 2010)................................................................17

*Long v. City & Cnty. of Honolulu*
511 F.3d 901 (9th Cir. 2007)...............................................................................14

*Martinez v. County of Los Angeles*
47 Cal. App. 4th 334 (1996)................................................................................22

*Matsushita Elec. v. Zenith Radio*
475 U.S. 574 (1986).............................................................................................13

*Mullenix v. Luna*
577 U.S. 7 (2015).................................................................................................20

*Munoz v. City of Union City*
120 Cal. App. 4th 1077 (2004)............................................................................22

*O'Doan v. Sanford*
991 F.3d 1027 (9th Cir. 2021).............................................................................21

*Pearson v. Callahan*
555 U.S. 223 (2009).............................................................................................21

*Porter v. Osborn*
546 F.3d 1131 (9th Cir. 2008).............................................................................18

*Reese v. Anderson*
926 F.2d 494 (5th Cir.1991)................................................................................17

*Reese v. Cnty of Sacramento*
888 F.3d 1030 (2018)...........................................................................................24

*Romero v. Kitsap County*
931 F.2d 624 (9th Cir. 1991)...............................................................................20

*S.B. v. Cnty. of San Diego*
864 F.3d 1010 (9th Cir. 2017).............................................................................14

7

**MANNING | KASS**

*Saucier v. Katz*
    533 U.S. 194 (2001) ........................................................................21

*Smith v. Agdeppa*
    2023 U.S. App. LEXIS 22954 (9th Cir. Aug. 30, 2023)..................22

*Smith v. City of Hemet*
    394 F.3d 689 (9th Cir. 2005)...................................................14, 17

*Smith v. Wade*
    461 U.S. 30 (1983) ..........................................................................25

*Smolen v. Deloitte, Haskins & Sells*
    921 F.2d 959 (9th Cir. 1990)...........................................................13

*Strong v. State*
    201 Cal. App. 4th 1439 (2011) ........................................................25

*Tennessee v. Garner*
    471 U.S. 1 (1985) .....................................................................14, 17

*Thompson v. Hubbard*
    257 F.3d 896 (8th Cir. 2001) ..........................................................21

*Torres v. City of Madera*
    648 F.3d 1119 (9th Cir. 2011) .........................................................21

*Villalobos v. City of Santa Maria*
    85 Cal. App. 5th 383 (2022).............................................................23

*Ward v. City of San Jose*
    967 F.2d 280 (9th Cir. 1991) ...........................................................26

*White v. Pauly*
    580 U.S. 73 (2017) .........................................................................19


**STATUTES**

California Civil Code
    Section 52.1 ......................................................................................24

California Government Code
    Section 815.2(a).................................................................................25

California Penal Code
    Section 148(a)(1) ..............................................................................16

California Penal Code
    Section 196 .......................................................................................22

California Penal Code
    Section 69(a)......................................................................................16

Federal Rule Civil Procedure
      Rule 56(c) ....................................................................................... 12

Federal Rules of Civil Procedure
      Rule 50(a) ....................................................................................... 13

**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs brings this action against defendants County of San Bernardino ("County") and Deputy Justin Lopez ("Deputy Lopez") (collectively "Defendants") for violation of constitutional rights and state laws in connection with the June 21, 2022, deputy-involved shooting incident involving Shane Holland ("Holland") and Deputy Lopez.

However, the uncontroverted material facts establish that Defendants did not violate legal rights under California state law or the Constitution.  [*See generally* UF 1-31.]  Therefore, Defendants are entitled to summary judgment on each of plaintiffs' claims.

### II.   STATEMENT OF UNCONTROVERTED FACTS

On June 21, 2022, at approximately 2 a.m., San Bernardino County Sheriff's Department Deputy Justin Lopez ("Deputy Lopez") conducted a traffic stop on a silver Ford Explorer in the area of US Route 395 and Cactus Road, in Adelanto.  [UF 1.]  Deputy Lopez broadcasted the Explorer did not have license plates, but later stated that the vehicle had an obstructed rear license plate.  [UF 2.]

Deputy Lopez made contact with the driver, Robert Hanson ("Hanson"), and the passenger who identified himself as Andrew Atkins, later identified by investigators as Shane Holland ("Holland").  [UF 3.]  Deputy Lopez asked Hanson if he had his license and registration, which Hanson stated he did not.  [UF 4.]  Deputy Lopez also asked if either Hanson or Holland was on probation or parole, Hanson stated no.  [UF 5.]  Holland also told Deputy Lopez that he did not have an ID.  [UF 6.]  Deputy Lopez advised the subjects he would return to his patrol vehicle to conduct a records check and did so over the radio through dispatch.  [UF 7.]

When Deputy Lopez was at his patrol vehicle, Hanson asked Holland "what are you doing," regarding giving Deputy Lopez somebody else's name.  [UF 8.]  Holland told Hanson that he had a warrant for his arrest and he was going to be

incarcerated for a long time.  [UF 9.]  Holland asked Hanson to "take off" from the traffic stop to distract Deputy Lopez and allow Holland to flee.  [UF 10.]  Hanson refused to assist Holland and said he was not going to get into trouble for Holland.  [UF 11.]  Holland chose to run from the passenger side of the vehicle into the desert.  [UF 12.]

Deputy Lopez saw Holland get out of the vehicle and told him to get back in the vehicle, but Holland started fleeing from the traffic stop.  [UF 13.]  Deputy Lopez notified dispatch of the foot pursuit on the radio.  [UF 14.]  Deputy Lopez began running after Holland, and told Holland to get on the ground.  [UF 15.]

Deputy Lopez believed that Holland had something in his waistband, so he commanded Holland multiple times to "Let me see your hands."  [UF 16.]  In response, Holland said "I will shoot you" multiple times.  [UF 17.]

Deputy Lopez told Holland to show him his hands a total of 19 times within a period of one minute and nineteen seconds.  [UF 18.]  Holland told Deputy Lopez that he was going to shoot him a total of 10 times during that same period.  [UF 19.]

Immediately after Holland stated, "I will shoot you" the tenth time, Deputy Lopez fired his weapon six times in quick succession at Holland.  [UF 20.]  After the shooting, Deputy Lopez immediately put out "shots fired" over the radio and requested medical.  [UF 21.]

Deputy Kristopher Hillebrand ("Deputy Hillebrand") and Sergeant Mark Rios ("Sergeant Rios") heard the broadcast of the foot pursuit, and "shots fired" and arrived within approximately one minute of the shots fired broadcast.  [UF 22.]  When Deputy Hillebrand arrived he asked Deputy Lopez where is the gun, and Deputy Lopez replied "I don't know.  He said he was going to shoot me."  [UF 23.]

Deputy Lopez handcuffed Holland and then proceeded to pat down Holland to search him for weapons and check for injuries.  [UF 24.]  After Holland was handcuffed and searched, Deputy Hillebrand called over the radio to notify medical it was clear for them to proceed into the scene.  [UF 25.]  When Sergeant Rios arrived,

Deputy Lopez asked him to retrieve a medical aid trauma kit from his marked patrol vehicle and Sergeant Rios immediately began to administer medical aid to Holland and requested additional medical assistance.  [UF 26.]  American Medical Response paramedics arrived within approximately five minutes and pronounced Holland deceased.  [UF 27.]

Deputy Lopez did not identify a gun in Holland's hand prior to the shooting. and no gun was collected from Holland after the incident.  [UF 28.]

However, based on Holland' statement "I will shoot you," and a black object that was in Holland's right hand at waist level, Deputy Lopez reasonably believed that Holland was in possession of a gun.  [UF 29.]  Additionally, Deputy Lopez engaged in a foot pursuit because he reasonably believed that Holland was an immediate danger to himself as there was no cover for him because they were in the middle of the dessert and to the public because Holland was running towards a residential neighborhood.  [UF 30.]  Lastly, Deputy Lopez did not draw his weapon until after Holland yelled "I will shoot you" and reasonably believed that Holland had a gun based upon the way Holland was holding his waistband.  [UF 31.]

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party demonstrates "that there is no genuine issue as to any material fact. . . ."  Fed. R. Civ. P. 56(c)  A fact is material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the United States Supreme Court rejected the contention that the moving party must support its summary judgment motion with evidence proving the non-existence of an essential element of plaintiff's cause of action.  Rather, the Court held that "the moving party bears the burden of informing the court of the basis for its motion, and identifying parts of the file which it believes indicated an absence of a general issue of material fact."  *Id*. at 323.  The burden then shifts to the respondent to set forth affirmative evidence.  The

non-moving party "must set forth specific facts showing that there is a genuine issue of material fact for trial." *Anderson,* 477 U.S. at 248.  The party who bears the burden of proof at trial also bears the burden of producing sufficient evidence in opposition to the summary judgment motion to enable reasonable jurors to find for that party. The standard is the same as that for judgment as a matter of law under Federal Rules of Civil Procedure, Rule 50(a).  *Id*. at 249.

In opposing a motion for summary judgment, it is insufficient to merely show that there is some "metaphysical doubt as to material facts."  *Matsushita Elec. v. Zenith Radio,* 475 U.S. 574, 576 (1986).  The plaintiff must show the existence of a genuine issue and "produce at least some 'significant probative evidence tending to support the complaint.'"  *Smolen v. Deloitte, Haskins & Sells,* 921 F.2d 959, 963 (9th Cir. 1990) (citations omitted).  The responding party cannot merely rest upon the allegations and the pleadings.  *Hansen v. Black,* 885 F.2d 642, 644 (9th Cir. 1989).

## IV.   ARGUMENT

### A.   Deputy Lopez Used Objectively Reasonable Force Under the Totality of the Circumstances.

Deputy Lopez is entitled to judgment on all of plaintiffs' force-based claims, including the second claim for excessive force, fourth claim for substantive due process violation, and the state law claims for battery, negligence and violation of the Bane Act.  Under the uncontroverted evidence, Deputy Lopez used only objectively reasonable force during the incident.

In *Graham v. Connor*, 490 U.S. 386, 388 (1989), the Supreme Court held that an excessive force claim is properly analyzed under the Fourth Amendment's objective reasonableness standard.  The *Graham* Court set forth a non-exhaustive list of factors to be considered in evaluating whether the force used to effect a particular seizure is reasonable: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape.  *Id*. at 394-95.  The test is an

objective one, viewed from the vantage of a reasonable officer at the scene, and is highly deferential to the police officer's need to protect himself or others. *Id.* at 396-97. The "calculus of reasonableness" in these circumstances "must embody allowance for the fact that police officers are often forced to make split-second judgments" and the courts should not apply the "20/20 vision of hindsight." *Id.*

The *Graham* factors as analyzed below weigh in favor of finding that Deputy Lopez is entitled to judgment on all of plaintiffs' force-based claims.

### 1. Holland posed an immediate threat to Deputy Lopez and the public.

In analyzing an incident under the *Graham* criteria, the "most important single element of the three specified factors: ***whether the suspect poses an immediate threat to the safety of the officers or others,"*** is the starting point. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (emphasis added); *see also S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017). Further, "[i]f the person is armed – or reasonably suspected of being armed – a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013). When a suspect points a gun at an officer, "the Constitution undoubtedly entitles the officer to respond with deadly force." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013); *see also Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007) (officer's use of force was justified when "fellow officers radioed that [the suspect] was yelling threats at them and then radioed that [she] was shooting at them"). Reasonableness doesn't "always require[] officers to delay their fire until a suspect turns his weapon on them." *George*, 736 F.3d at 838.

Accordingly, a police officer may use *deadly* force where the officer reasonably believes (has probable cause that) the suspect poses an immediate threat of death or serious physical harm to the officer or others: in order to protect himself/others or to prevent escape. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Officers shouldn't have to "wait until a gun is pointed at [them] before [they are] entitled to take action."

1    *Anderson v. Russell*, 247 F.3d 125, 131 (4th Cir. 2001).

2        Here, Deputy Lopez was conducting a traffic stop, and after making contact

3 with the driver, Hanson, and the passenger, Holland, who identified himself as

4 Andrew Atkins, told the subjects he was going to his patrol vehicle to conduct a

5 records check, then Holland got out of the vehicle and started fleeing from the traffic

6 stop. [UF 1, 2, 3, 7, 13.]

7        Importantly, when Deputy Lopez was at his patrol vehicle, Holland told

8 Hanson that he had a warrant for his arrest and he was going to be incarcerated for a

9 long time and asked Hanson to "take off" from the traffic stop to distract Deputy

10 Lopez and allow him to flee, Hanson refused, and Holland chose to run from the

11 passenger side of the vehicle into the desert. [UF 8, 9, 10, 11, 12.]

12        Deputy Lopez saw Holland get out of the vehicle, told him to get back in the

13 car, began running after him, and ***repeatedly commanded*** Holland to get on the

14 ground. [UF 13, 15.] Further, Deputy Lopez reasonably believed that Holland had

15 something in his waistband, so he commanded Holland 19 times to "Let me see your

16 hands." [UF 16, 18.] In response, Holland said "I will shoot you" 10 times. [UF 17,

17 19.] Immediately after Holland stated, "I will shoot you" ***the tenth time***, Deputy

18 Lopez fired his weapon six times in quick succession at Holland. [UF 20.]

19        Importantly, Deputy Lopez did not draw his weapon until after Holland yelled

20 "I will shoot you" and ***reasonably believed*** that Holland had a gun based upon the

21 way he was holding his hands at his waistband. [UF 29, 31.]

22        Accordingly, Deputy Lopez repeatedly gave commands to Holland to show his

23 hands and stop reaching towards his waistband, and ***Holland repeatedly shouted to***

24 ***Deputy Lopez that he would shoot him***. Deputy Lopez perceived Holland as a ***deadly***

25 ***threat*** to himself and the residential neighborhood he was running towards and thus,

26 the severity of the threat was quite high based solely on Holland's actions. [UF 30.]

27        Therefore, the uncontroverted evidence supports that Holland posed an

28 ***immediate threat to the safety*** of Deputy Lopez and the public.

MANNING | KASS

**2.    Holland ignored the Deputy Lopez' commands, and escalated the incident.**

The severity of the crime factor also supports that Deputy Lopez' actions were objectively reasonable.

As an initial matter, Holland violated California Penal Code Section 148(a)(1) when he ***got out of the vehicle and started fleeing from the traffic stop***.[1]  [UF 3, 7, 13.]  Further, Holland violated California Penal Code Section 69(a) when he yelled "I will shoot you" 10 times to Deputy Lopez.[2]  [UF 17, 19.]

Further, there can be no dispute that Holland ***escalated*** the traffic stop by getting out of the vehicle and running towards the desert.  [UF 1, 2, 12, 13.]  Further, Holland gave Deputy Lopez a false name, Andrew Atkins, when Deputy Lopez asked him for his name because he had a warrant for his arrest.  [UF 3, 8 9.]  Importantly, Deputy Lopez saw Holland get out of the vehicle, told him to get back in the car, began running after Holland, and repeatedly commanded Holland to get on the ground.  [UF 13, 15.]

Deputy Lopez believed that Holland may have had something in his waistband, so he commanded Holland 19 times to "Let me see your hands."  [UF 16, 18.]  In response, Holland said "I will shoot you" 10 times.  [UF 17, 19.]  Immediately after Holland stated, "I will shoot you" the tenth time, Deputy Lopez fired his weapon six times in quick succession at Holland.  [UF 20.]

Importantly, Deputy Lopez did not draw his weapon until after Holland yelled "I will shoot you" and ***reasonably believed*** that Holland had a gun and perceived him

---

[1] "Every person who willfully resists, delays, or obstructs any public officer, peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished . . .."

[2] "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment."

**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT**

1  as ***deadly threat*** to himself and the residential neighborhood he was running towards
2  while holding his waistband.  [UF 29, 30, 31.]

3        **3.**      **Case law supports the Deputy Lopez' actions.**

4        The Supreme Court has held that a police officer may not use deadly force
5  "unless it is necessary to prevent escape and the officer has probable cause to believe
6  that the suspect poses a significant threat of death or serious physical injury to the
7  officer or others." *Tennessee,* 471 U.S. at 3.  Thus, "where a suspect threatens an
8  officer with a weapon such as a ***gun*** or knife, ***the officer is justified in using deadly***
9  ***force***." *Smith*, 394 F. 3d at 704 (emphasis added); *accord Kisela v. Hughes,* 584 U.S.
10 100, 106 (2018) (rev'g denial of qualified immunity where an erratic, knife-armed
11 suspect moved toward a civilian in a perceived-threatening manner, despite officer
12 commands to drop the knife, the officer's use of deadly force was entitled to
13 judgment.).

14       Further, where the uncontroverted objective evidence supports an officer's
15 belief that a suspect was dangerous to others and/or potential risk to the safety of the
16 officer or others, the officer is entitled to summary judgment because his responding
17 use of force is deemed reasonable as a matter of law. *See, e.g., Labensky v. Cornwell*,
18 763 F. Supp. 2d 921, 922-25, 929 (S.D. Ohio 2010) ("To use force, actual danger need
19 not threaten the officer or other officers; an officer need only have a reasonable
20 perception of danger."  Thus, "[a]n officer need not see a weapon to presume that a
21 suspect may be reaching for or attempting to use a weapon." *Id.* at 926; *relying on*
22 *Dudley v. Eden,* 260 F.3d 722 (6th Cir.2001); *Reese v. Anderson,* 926 F.2d 494, 501
23 (5th Cir.1991).

24       Here, there can be no dispute that Holland posed an ***immediate threat to the***
25 ***safety*** of the Deputy Lopez and the others in the vicinity.  [UF 1-31.]  Importantly,
26 when Holland got out of the vehicle, Deputy Lopez told him to get back in the car,
27 began running after him, and repeatedly commanded Holland to get on the ground.
28 [UF 13, 15.]  Further, Deputy Lopez reasonably believed that Holland had something

in his waistband, so he commanded Holland 19 times to "Let me see your hands." [UF 16, 18, 29, 30, 31.]  In response, Holland said "I will shoot you" 10 times.  [UF 17, 19.]  Immediately after Holland stated, "I will shoot you" *the tenth time*, Deputy Lopez fired his weapon six times in quick succession at Holland.  [UF 20.]

Importantly, Deputy Lopez did not draw his weapon until after Holland, while holding his hands at his waistband, yelled "I will shoot you" and ***reasonably believed*** that Holland had a gun and perceived him as ***deadly threat*** to himself and the residential neighborhood he was running towards.  [UF 29, 30, 31.]

Accordingly, Deputy Lopez' use of force was justified in response to the immediate deadly threat from Holland's actions, and plaintiffs' force-based claims must fail.

**B.     Plaintiffs' Fourth Claim for Substantive Due Process/Interference with Familial Relationship Fails.**

A claim against an officer for substantive due process rights under the 14th Amendment considers the subjective intent of the officer.  *A. D. v. State of Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2012).  In circumstances with "constant flux" that require officers to make "snap judgments," substantive due process violations exist only when the officer "shocks the conscience" or intends to "harm, terrorize or kill" the suspect without a legitimate law enforcement objective.  *Porter v. Osborn*, 546 F.3d 1131, 1140-41 (9th Cir. 2008).  "Legitimate law enforcement objectives [include] arrest, self-defense, or the defense of others."  *Fewell v. California*, 2017 WL 6043080, at *6 (C.D. Cal. Apr. 11, 2017).  Summary judgment for the officer is appropriate when there is no evidence of an ulterior motive.  *Gonzalez v. City of Anaheim*, 747 F.3d 789, 798-799 (9th Cir. 2014).

Here, Deputy Lopez had to make a snap decision in response to Holland's behavior and ***yelling ten times*** that he was going to shoot Deputy Lopez, thus actual deliberation was not practical or feasible under the circumstances.  There is no evidence that Deputy Lopez acted with a purpose to harm, such that his conduct

MANNING | KASS

1  "*shocks the conscience*."

2      Rather, the evidence shows that when Holland got out of the vehicle, Deputy

3  Lopez told him to get back in the car, began running after him, and repeatedly

4  commanded Holland to get on the ground.  [UF 13, 15.]  Further, Deputy Lopez

5  reasonably believed that Holland had something in his waistband, so he commanded

6  Holland 19 times to "Let me see your hands."  [UF 16, 18, 29, 30, 31.]  In response,

7  Holland said "I will shoot you" 10 times.  [UF 17, 19.]  Immediately after Holland

8  stated, "I will shoot you" *the tenth time*, Deputy Lopez fired his weapon six times in

9  quick succession at Holland.  [UF 20.]

10     Importantly, Deputy Lopez did not draw his weapon until after Holland, while

11 holding his hand at his waistband, yelled "I will shoot you" and *reasonably believed*

12 that Holland had a gun and perceived him as *deadly threat* to himself and the

13 residential neighborhood he was running towards.  [UF 29, 30, 31.]

14     Accordingly, actual deliberation was not practical or feasible under the

15 circumstances as the situation was very dynamic, uncertain, and rapidly-evolving.

16 Thus, there is no evidence that Deputy Lopez acted with a purpose to harm, such that

17 his conduct "*shocks the conscience.*"  Accordingly, Plaintiffs' claim fails and should

18 be dismissed with prejudice.

19     **C.    Deputy Lopez is Entitled to Qualified Immunity.**

20     Even if Deputy Lopez' actions in defending himself rose to the level of a

21 constitutional violation, he is nevertheless entitled to qualified immunity from suit on

22 plaintiffs' federal claims.

23     An officer is entitled to qualified immunity when at the time of the use of force

24 incident there was no prior case precedent with substantially analogous facts to put

25 the officer on notice that his conduct violated the suspect's clearly established

26 constitutional or statutory rights.  *White v. Pauly,* 580 U.S. 73, 79 (2017).  Although

27 a case directly on point is not required for a right to be clearly established, "existing

28 precedent must have placed the statutory or constitutional question beyond debate."

*Id.* (internal quotations omitted); *see also Kisela,* 584 U.S. at 103-06.   "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations and citations omitted).   It is plaintiffs' burden to establish that the right in question was clearly established at the time of the incident. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

Here, at the time of the incident, it was clearly established that the use of deadly force is reasonable if a suspect "poses a significant threat of death or serious physical injury to the officer or others."  *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (emphasis added) (internal quotation omitted).   Importantly, "*where a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force*."  *Hayes v. County of San Diego*, 736 F.3d 1223, 1233 (9th Cir. 2013) (internal alteration omitted) (emphasis added); *Smith*, 394 F.3d at 704; *see also Cruz v. City of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014) ("It would be unquestionably reasonable for police to shoot a suspect . . . if he reaches for a gun in his waistband.")

Further, other circuits have held that an officers' use of deadly force was justified where the officer *reasonably believed the suspect possessed a gun and the suspect was resisting or fleeing from law enforcement*.  *See, e.g.*, *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (holding officer's use of deadly force against an armed suspect was objectively reasonable "[r]egardless of whether [the suspect] had drawn his gun" and explaining that "[t]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect" (citations and internal quotation marks omitted)); *Anderson v. Russell*, 247 F.3d 125, 130–31 (4th Cir. 2001) (affirming summary judgment against excessive force claim where officer reasonably believed suspect was armed with a handgun (even though the bulge the officer observed in suspect's

waistband later was determined to be an eyeglasses case) and concluding that the officer "acted reasonably by firing on [the suspect] as a protective measure before directly observing a deadly weapon"); *Thompson v. Hubbard*, 257 F.3d 896, 898–99 (8th Cir. 2001) (affirming summary judgment against excessive force claim because officer's use of deadly force was reasonable, even though it later was determined that the suspect possessed no weapon, and explaining that "[a]n officer is not constitutionally required to wait until he sets eyes upon the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun").  Accordingly, plaintiffs cannot prove that "clearly established law" prohibited the Deputy Lopez from using lethal force.  *O'Doan v. Sanford*, 991 F.3d 1027, 2037 (9th Cir. 2021).

These principles apply even when officers are reasonably mistaken about the nature of the threat.  "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of" an immediate threat, and "in those situations courts will not hold that they have violated the Constitution."  *Saucier v. Katz*, 533 U.S. 194, 206 (2001).  Take the example given by the Court: "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, . . . the officer would be justified in using more force than in fact was needed."  *Id.* at 205.  Thus, the Constitution even allows for officer's action that resulted from a reasonable "mistake of fact."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  When an officer's "use of force is based on a mistake of fact, we ask whether a reasonable officer would have or should have accurately perceived that fact."  *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011).

Here, Deputy Lopez reasonably believed that Holland was in possession of a gun, based on Holland's repeated statement "I will shoot you," Holland not removing his hands from his waistband and looking over his shoulder the whole pursuit, and the black object that Deputy Lopez observed in Holland's right hand at waist level. [UF 16, 17, 19, 29, 30, 31.]

1    Further, "[n]o clearly established law requires the officers to have sustained
2    more grievous injuries or worse before using lethal force in the particular situation
3    they confronted." *Smith v. Agdeppa*, 2023 U.S. App. LEXIS 22954, at *24 (9th Cir.
4    Aug. 30, 2023).  Thus, Deputy Lopez is entitled to qualified immunity.

5         **D.    Plaintiffs' Redundant Claims for Battery, Negligence, and Violation**
6                 **of the Bane Act Fail.**

7         Plaintiffs' state law force claims are evaluated under the same federal
8    reasonableness standard for Fourth Amendment excessive force cases, as set forth in
9    *Graham v. Connor*, 490 U.S. 386 (1989).  *See Hayes v. County of San Diego*, 57 Cal.
10   4th 622, 637-39 (2013) (adopting *Graham* reasonableness standard for seizure-related
11   negligence claims against officers but clarifying that scope of liability may extend to
12   pre-seizure conduct under certain circumstances); *Archibald v. Cty. of San*
13   *Bernardino*, 2018 U.S. Dist. LEXIS 171243, at *22 (C.D. Cal. Oct. 2, 2018)
14   (acknowledging that plaintiffs' battery, negligence, and Bane Act claims are governed
15   by the same inquiry that governs their excessive force claims); *Martinez v. County of*
16   *Los Angeles*, 47 Cal. App. 4th 334, 349-50 (1996) (citing Cal. Penal Code § 196 and
17   holding that where officers used reasonable force under the Fourth Amendment
18   standards, there could be no liability under comparable state-law torts); *Edson v. City*
19   *of Anaheim*, 63 Cal. App. 4th 1269, 1272-73 (1998) (holding that the standard for
20   reasonable force under state assault/battery law is the same as it is for federal
21   excessive force cases); *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 525 (2009)
22   (holding that an officer is immune from any state-law claim for negligence in "pre-
23   shooting conduct" and tactical decisions associated with the use of force where the
24   use of force itself is reasonable under the Fourth Amendment standard); *Munoz v. City*
25   *of Union City*, 120 Cal. App. 4th 1077, 1101-03 (2004) (holding that as to a state-law
26   battery claim, whether the force was unreasonable must be decided under the Fourth
27   Amendment reasonableness standard).

28        Here, Deputy Lopez was not required to hold fire in order to ascertain whether

MK MANNING | KASS

the Holland would in fact, shot at him.  *See Villalobos v. City of Santa Maria*, 85 Cal. App. 5th 383, 389 (2022).   Further, because Deputy Lopez' use of force was objectively reasonable under *Graham,* Deputy Lopez is entitled to judgment on plaintiffs' redundant state law claims.

### 1. Pre Force Negligence Claim

Under California law, the *scope* of conduct that is potentially actionable in negligence also includes pre-force/pre-seizure officer conduct.  *Hayes*, 57 Cal.4th at 254.   Accordingly, an officers' pre-force tactical conduct may be actionable in negligence, even if the use of force itself is otherwise reasonable-at-law, only if: (1) from the perspective of a reasonable officer, the pre-force conduct is objectively unreasonable under the totality of the circumstances known to the defendant officer at the time; and (2) the pre-force conduct unreasonably provokes-causes the suspect to take the very action that the officer, in turn, relies upon to justify his subsequent use of force.  *Id.* at 637-40.

However, although pre-shooting conduct is included in the totality of circumstances, law enforcement personnel have a degree of discretion as to how they choose to address a particular situation, and there is no particular pre-shooting protocol that is always required.  *Id.* at 258   Therefore, summary judgment is appropriate when the trial court determines that, viewing the facts most favorably to the plaintiff, no reasonable juror could find negligence.  *Id.* at 258; *relying on Hernandez v. City of Pomona*, 46 Cal. 4th 501, 521 (2009).

Here, from the perspective of a reasonable peace officer under the totality of the circumstances known to Deputy Lopez at the time, there is no evidence showing that Deputy Lopez unreasonably provoked Holland.  Rather, the evidence shows that when Holland got out of the vehicle, Deputy Lopez told him to get back in the car, began running after him, and repeatedly commanded Holland to get on the ground to deescalate the situation.  [UF 13, 15.]  Further, Deputy Lopez commanded Holland 19 times to "Let me see your hands," to which  Holland responded "I will shoot you"

MANNING | KASS

1  10 times, escalating the situation.  [UF 16, 17, 18, 19.]

2      Importantly, Deputy Lopez engaged in a foot pursuit because he reasonably

3  believed that Holland was an immediate danger to him as there was no cover because

4  they were in the middle of the desert and to the public because Holland was running

5  towards a residential neighborhood.  [UF 30.]  Further, Deputy Lopez did not draw

6  his weapon until after Holland, while holding his hand at his waistband, yelled "I will

7  shoot you" multiple times and ***reasonably believed*** that Holland had a gun.  [UF 29,

8  31.]

9      Accordingly, there is no evidence that Deputy Lopez unreasonably provoked

10  or caused Holland to yell at Deputy Lopez that he was going to shoot him, ten times,

11  which in turn prompted Deputy Lopez to use the force at issue.  Therefore, Deputy

12  Lopez acted reasonably under the circumstances and his pre-force conduct was

13  justified.

14          **2.      Violation of the Bane Act**

15      California Civil Code section 52.1, known as the Bane Act, creates a cause of

16  action against those who interfere with constitutional rights "by threat, intimidation,

17  or coercion."  In an excessive force case, the Bane Act requires not merely that the

18  plaintiff establish a Fourth Amendment violation, but also "a specific intent to violate

19  the arrestee's right to freedom from unreasonable seizure."  *Reese v. Cnty of*

20  *Sacramento*, 888 F.3d 1030, 1043 (2018).  A plaintiff must prove that the offending

21  officer "intended not only the force, but its unreasonableness, its character as more

22  than necessary under the circumstances."  *Id.* at 1045 (internal quotation marks

23  omitted).

24      Here, there is no evidence that Deputy Lopez specifically intended to deprive

25  Holland of his constitutional rights.  Rather, the evidence shows that when Holland

26  got out of the vehicle, Deputy Lopez told him to get back in the car, began running

27  after him, and repeatedly commanded Holland to get on the ground.  [UF 13, 15.]

28  Further, Deputy Lopez reasonably believed that Holland had something in his

**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT**

waistband, so he commanded Holland 19 times to "Let me see your hands."  [UF 16, 18.]  In response, Holland said "I will shoot you" 10 times.  [UF 17, 19.]  Immediately after Holland stated, "I will shoot you" the tenth time, Deputy Lopez fired his weapon six times in quick succession at Holland.  [UF 20.]

Importantly, Deputy Lopez did not draw his weapon until after Holland yelled "I will shoot you" and ***reasonably believed*** that Holland had a gun and perceived him as ***deadly threat*** to himself and the residential neighborhood he was running towards.  [UF 29, 30, 31.]

Accordingly, there is no evidence that Deputy Lopez specifically intended to deprive Holland of his constitutional rights.

**E.     The County Cannot be Liable For Any of Plaintiffs' State Law Claims.**

To the extent that plaintiffs' are attempting to hold the County liable under California Government Code § 815.2(a), plaintiffs have not presented any evidence that Deputy Lopez or any County employee is liable to plaintiffs, thus the County cannot be held liable.  *See Strong v. State*, 201 Cal. App. 4th 1439, 1448 (2011) (Pursuant to Government Code § 815.2, "[A] public entity's liability hinges on the liability of its employee").

**F.     Plaintiffs' Request for Punitive Damages Lacks Merit.**

To obtain punitive damages a plaintiff must prove that a defendant's actions were malicious, oppressive, or in reckless disregard of the defendant's rights.  *Dang v. Cross,* 422 F.3d 800, 810 (9th Cir. 2005); Ninth Circuit Model Jury Instruction 5.5 (2018).  The United States Supreme Court has determined that punitive damages are available in a § 1983 action only when a defendant's conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade,* 461 U.S. 30, 51 (1983).  Where there is no evidence that a § 1983 defendant has acted with evil intent, there is no legal right to punitive damages. *Ward v. City of San Jose,* 967 F.2d 280, 286 (9th Cir.

1991).

Here, there is no evidence that Deputy Lopez acted with evil intent, rather the undisputed evidence shows that Holland escalated the traffic stop by getting out of the vehicle and running towards the desert.  [UF 1, 2, 12, 13.]  Further, Holland gave Deputy Lopez a false name, Andrew Atkins, when Deputy Lopez asked him for his name because he had a warrant for his arrest.  [UF 3, 8 9.]

Importantly, when Holland got out of the vehicle, Deputy Lopez told him to get back in the car, began running after him, and repeatedly commanded Holland to get on the ground.  [UF 13, 15.]  Further, Deputy Lopez reasonably believed that Holland had something in his waistband, so he commanded Holland 19 times to "Let me see your hands."  [UF 16, 18.]  In response, Holland said "I will shoot you" 10 times.  [UF 17, 19.]  Immediately after Holland stated, "I will shoot you" the tenth time, Deputy Lopez fired his weapon six times in quick succession at Holland.  [UF 20.]

Importantly, Deputy Lopez did not draw his weapon until after Holland yelled "I will shoot you" and ***reasonably believed*** that Holland had a gun and perceived him as ***deadly threat*** to himself and the residential neighborhood he was running towards. [UF 29, 30, 31.]

Thus, there is no evidence that the conduct of Deputy Lopez during the incident was malicious, oppressive, or in reckless disregard of Holland's rights.

## V.   CONCLUSION

In light of all of the foregoing, Defendants request that their motion for summary judgment be granted in its entirety.

1  | DATED:  August 12, 2024        **MANNING & KASS**

2                                **ELLROD, RAMIREZ, TRESTER LLP**

3

4                 By:     /s/ *Kayleigh Andersen*

5                      Eugene P. Ramirez

6                      Kayleigh Andersen

                    Attorneys for Defendants, COUNTY OF

7                      SAN BERNARDINO and JUSTIN LOPEZ

8

9

10               **L.R. 11-6.2. Certificate of Compliance**

11       The undersigned, counsel of record for Defendants, COUNTY OF SAN

12  BERNARDINO and JUSTIN LOPEZ, certifies that this brief contains 5706 words,

13  which complies with the word limit of L.R. 11-6.1.

14  DATED:  August 12, 2024

15

16                       /s/ *Kayleigh Andersen*

                     Kayleigh A. Andersen

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT**

MANNING | KASS