LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
Renee Masongsong, Esq. (SBN 281819)
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118
E-mail: dalekgalipo@yahoo.com, rvalentine@galipolaw.com

JAMES S. TERRELL (SBN: 170409)
15411 Anacapa Road
Victorville, CA 92392
Tel: 760-951-5850| Fax: 760-952-1085
E-mail: jim@talktoterrell.com

SHARON J. BRUNNER, (SBN: 229931)
LAW OFFICE OF SHARON J. BRUNNER
14393 Park Avenue, Suite 100
Victorville, CA 92392
Telephone: 760-243-9997
Fax: 760-843-8155
E-mail: sharonjbrunner@yahoo.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.H., et al., | Case No.: 5:23-cv-01028-JGB-SHK |
| Plaintiffs, | [*Honorable Jesus G. Bernal*] |
| v. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| COUNTY OF SAN BERNARDINO and JUSTIN LOPEZ, | |
| Defendants. | Date:        September 23, 2024<br>Time:        9:00 a.m.<br>Crtrm:      Courtroom 1<br>                 3470 Twelfth St.<br>                 Riverside, CA 92501 |
| | [*Filed concurrently with Plaintiff's Response to Defendants' Separate Statement of Facts; and Declaration of Renee V. Masongsong and Exhibits thereto; Declaration of Roger A. Clark*] |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES..............................................1

I.      INTRODUCTION ........................................................................................1

II.     STATEMENT OF RELEVANT FACTS ....................................................3

III.    LEGAL STANDARD .................................................................................5

IV.     ARGUMENT ...............................................................................................5

        A.    The Shooting Was Excessive ...........................................................5

        B.    Fourteenth Amendment....................................................................10

        C.    Lopez is Not Entitled to Qualified Immunity ....................................12

        D.    Battery and Negligence ...................................................................17

        E.    Bane Act ..........................................................................................19

        F.    Punitive Damages ...........................................................................19

V.      CONCLUSION .........................................................................................20

# TABLE OF AUTHORITIES

## Cases

*A.K.H. v. City of Tustin,*
    837 F.3d 1005 (9th Cir. 2016)........................................................................15

*Anderson v. Creighton,*
    483 U.S. 635 (1987)........................................................................................17

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)..........................................................................................5

*Bowles v. City of San Jose,*
    Case No. 19-cv-01027-NC..............................................................................16

*Brosseau v. Haugen,*
    543 U.S. 194 (2004)............................................................................12, 13, 17

*Bryan v. McPherson,*
    630 F.3d 805 (9th Cir. 2010)............................................................................6

*C.E.W. v. City of Hayward,*
    2015 WL 1926289 (N.D. Cal. Apr. 27, 2015) ...............................................11

*Campos v. City of Merced,*
    709 F. Supp. 2d 944 (E.D. Cal. 2010).............................................................20

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..........................................................................................5

*County of Sacramento v. Lewis,*
    523 U.S. 833 (1998)........................................................................................11

*Cruz v. City of Anaheim,*
    765 F.3d 1076 (9th Cir. 2014)......................................................................9, 15

*Cunningham v. City of Wenatchee,*
    345 F3d 802 (9th Cir. 2003) ..........................................................................12

*Deorle v. Rutherford,*
    272 F.3d 1272 (9th Cir. 2001).........................................................................7

*Drummond v. City of Anaheim,*
    343 F.3d 1052 (9th Cir. 2004) ......................................................................16

*Duenez v. City of Manteca,*
    2013 WL 6816375 (E.D. Cal. Dec. 23, 2013)................................................11

*Egan v. Mut. of Omaha Ins. Co.,*
    24 Cal. 3d 809 (1979)......................................................................................19

*Espinosa v. City & Cnty. of San Francisco,*
    598 F.3d 528 (9th Cir. 2010)........................................................................5, 12

*Estate of Clemente Najera Aguirre v. County of Riverside,*
    29 F.4th 624 (9th Cir. 2022) ................................................................. 13

*Estate of Lopez v. Gelhaus,*
    871 F.3d 998 (9th Cir. 2017) ................................................................. 14

*Estate of Najera Aguirre v. Cnty. of Riverside,*
    29 F.4th 624 (9th Cir. 2022) ................................................................. 13

*Forrett v. Richardson,*
    112 F.3d 416 (9th Cir. 1997) ................................................................. 16

*Gantt v. City of Los Angeles,*
    717 F.3d 702 (9th Cir. 2013) ................................................................. 10

*George v. Morris,*
    736 F.3d 829 (9th Cir. 2013) ............................................................. 7, 11

*Glenn v. Washington Cnty.,*
    673 F.3d 864 (9th Cir. 2011) ............................................................. 5, 12

*Gonzalez v. City of Anaheim,*
    747 F.3d 789 (9th Cir. 2014) ................................................................... 9

*Gordon v. Cnty. of Orange,*
    6 F.4th 961 (9th Cir. 2021) ................................................................... 14

*Graham v. Connor,*
    490 U.S. 386 (1989) ......................................................................... 5, 8

*Greer v. City of Hayward,*
    229 F. Supp. 3d 1091 (N.D. Cal. 2017) ............................................... 11

*Hayes v. County of San Diego,*
    57 Cal. 4th 622 (2013) ................................................................. 17, 18

*Headwaters v. County of Humboldt,*
    240 F.3d 1185 (9th Cir. 2000) ................................................................. 6

*Hernandez v. City of Huntington Beach,*
    798 Fed. Appx. 85 (9th Cir. 2019) ....................................................... 13

*Herrera v. Las Vegas Metro. Police Dept.,*
    298 F. Supp. 2d 1043 (D. Nev. 2004) ................................................... 19

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ............................................................................. 13

*Hopkins v. Andaya,*
    958 F.2d 881 (9th Cir. 1992) ................................................................... 5

*Jacquez v. City of San Jose,*
    Case No. 16-cv-05330-NC ................................................................... 16

*Johnson v. Jones*,
    515 U.S. 304 (1995) ................................................................................... 12

*K.H. Through Murphy v. Morgan*,
    914 F.2d 846 (7th Cir. 1990) ....................................................................... 17

*Koussaya v. City of Stockton*,
    54 Cal. App. 5th 909 (2020) ........................................................................ 18

*Longoria v. Pinal County*,
    873 F.3d 699 (9th Cir. 2017) .................................................................. 12, 14

*LSO, Ltd. v. Stroh*,
    205 F.3d 1146 (9th Cir. 2000) ..................................................................... 14

*Mattos v. Agarano*,
    661 F.3d 433 (9th Cir. 2011) ....................................................................... 14

*McLeod v. City of Redding*,
    No. 2:22-CV-00585 WBS JDP, 2024 WL 3011227 (E.D. Cal. June 12, 2024)
    ...................................................................................................................... 18

*Nelson v. City of Davis*,
    685 F.3d 867 (9th Cir. 2012) ......................................................................... 6

*Nicholson v. City of Los Angeles*,
    935 F.3d 685 (9th Cir. 2019) ....................................................................... 10

*Ohlson v. Brady*,
    9 F.4th 1156 (9th Cir. 2021) ........................................................................ 14

*Porter v. Osborn*,
    546 F.3d 1131 (9th Cir. 2008) ................................................................ 10, 11

*Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) .............................. 19

*Rivas-Villegas v. Cortesluna*,
    595 U.S. 1 (2021) ........................................................................................ 13

*S.R. Nehad v. Browder*,
    929 F.3d 1125 (9th Cir. 2019) ..................................................................... 11

*Santos v. Gates*,
    287 F.3d 846 (9th Cir. 2002) ....................................................................... 12

*Scott v. Henrich*,
    39 F.3d 912 (9th Cir. 1994) ....................................................................... 9, 14

*Smith v. City of Hemet*,
    394 F.3d 689 (2005) ...................................................................................... 6

*Smith v. Wade*,
    461 U.S. 30 (1983) ...................................................................................... 20

*Tatum v. City & County of San Francisco*,
 441 F.3d 1090 (9th Cir. 2006).........................................................................10

*Taylor v. Riojas*,
 592 U.S. 7 (2020)..........................................................................................13

*Tennessee v. Garner*,
 471 U.S. 1 (1985)...............................................................................6, 13, 16

*Torres v. City of Madera*,
 648 F.3d 1119 (9th Cir. 2011)...................................................8, 11, 12

*United States v. Lanier*,
 520 U.S. 259 (1997)........................................................................................13

*United States v. One Parcel of Real Prop.*,
 904 F.2d 487 (9th Cir. 1990)...........................................................................5

*United States v. Reese*,
 2 F. 3d 870 (9th Cir. 1993)......................................................................19

*Villalobos v. City of San Maria*,
 85 Cal. App. 5th 383 (2022)..................................................................18

*Wall v. County of Orange*,
 364 F.3d 1107 (9th Cir. 2004)................................................................12

Wilkins v. City of Oakland,
 350 F.3d 949 (9th Cir. 2003).....................................................................12

*Wilkinson v. Torres*,
 610 F.3d 546 (9th Cir. 2010)................................................................10

*Ziglar v. Abbasi*,
 582 U.S. 120 (2017)......................................................................................14

<u>Other Authorities</u>

Judicial Council of California Civil Jury Instructions 1305......................................17

Judicial Council of California Civil Jury Instructions 441......................................17

<u>Rules</u>

Federal Rules of Civil Procedure, Rule 56 ............................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This Court should deny Defendants' motion for summary judgment because both the disputed and undisputed facts show that the shooting of Shane Holland ("Holland") by San Bernardino County Sheriff's Department Deputy Justin Lopez ("Lopez") on June 21, 2022, was excessive and unreasonable.  Taking the facts in the light most favorable to Plaintiffs as the non-moving party, as this Court is required to do in evaluating a motion for summary judgment, Holland posed no immediate threat of death or serious bodily injury to any person at any point during this incident.  Therefore, there was no reason for Lopez to fire any of his six lethal shots at Holland.  Lopez is not entitled to qualified immunity on Plaintiffs' federal claim for excessive force because the law was clearly established that deadly force would be unjustified under the facts of this case, and qualified immunity does not apply to Plaintiffs' state law claims.

It is undisputed that Holland was unarmed during the entirety of this incident.  Lopez initiated a traffic stop for a minor vehicle code infraction.  Lopez was not responding to a serious or violent crime, and he had no information that Holland had a gun or had injured anyone.  Holland exited the vehicle and ran from Lopez.  Lopez abandoned the traffic stop and pursued Holland on foot as a solo officer. Defendants' police practices expert, Philip Sanchez, and Plaintiffs' police practices expert, Roger Clark, both agree that under the facts of this case, Lopez could not shoot Holland for running away.  As he ran away, Holland stated, "I will shoot" or "I will shoot you" ten times.  Both police practices experts also agree that Lopez could not shoot Holland for stating, "I will shoot you" as he was running away. Holland was still moving away from Lopez immediately prior to the shooting and at the time of the shooting.  It is undisputed that Lopez did not give Holland a verbal warning that deadly force would be used before shooting him.

After the shooting, one of the responding officers asked Lopez, "Do we have a gun?" or "Did he have a gun?" and Lopez responded that he did not know. Lopez did not tell responding officers, "be careful, he has a gun!" or "we need to find the gun. Lopez also never communicated that he thought Holland had a gun over his police radio and never gave Holland a command to "drop it." This, along with other circumstantial evidence indicating that the incident did not take place as Lopez described, places Lopez's credibility at issue, particularly where there is no video of the shooting and no witnesses to the shooting.

According to Plaintiffs' expert, Roger Clark, as stated in his declaration filed concurrently herewith, Lopez's subjective belief that Holland had a gun in his hand and was going to shoot him was not reasonable, including because Lopez never identified the object as a gun. There are also no objective facts to support Lopez's alleged belief that Holland would have posed an immediate threat of death or serious bodily injury to the community if Lopez allowed Holland to continue to run and set up a perimeter to contain and search for Holland. As explained in Mr. Clark's declaration, a reasonable officer in Lopez's position would have recognized that the object was a cell phone and not a gun (assuming Holland was holding the cell phone in his hand. Lopez admitted that Holland never took a shooting stance and conceded that he never specifically identified a gun in Holland's hand or on his person.

Defendants' own expert agrees that if Holland did not turn toward Lopez with an object that looked like a gun in his hand, then the shooting would be unjustified. According to Mr. Clark, under the facts of this case, Lopez would actually have to actually identify a gun in Holland's hand and see the gun coming toward him in order to justify his use of deadly force, which was not the case here. For these reasons and the reasons set forth below, Defendants' motion should be denied as to Plaintiffs' claims for excessive force, interference with familial relations, battery, negligence, and violation of the Bane Act.

## II.   STATEMENT OF RELEVANT FACTS

Lopez was not responding to a serious or violent crime.  [Plaintiffs' Additional Uncontroverted Fact ("PAUF") 32].  At the time of the shooting, Lopez had no information that Holland had injured anyone. (PAUF-33).  Lopez had no information that there were any weapons in the car, and he did not see any weapons in the car when he was at the passenger side of the car. (PAUF-34).  When Lopez was at the passenger side of the car, neither occupant of the car threatened to harm Lopez.  (PAUF-35).  The driver, Robert Hanson, observed a black cell phone in Holland's hand when Holland ran from the vehicle.  (PAUF-36).  Holland was unarmed during this incident. (PAUF-37).  Defendants' police practices expert agrees that there would have been no justification to use deadly force against Holland prior to Holland exiting the car. (PAUF-38).

Lopez pursued Holland on foot as a solo officer.  (PAUF-39).  During the foot pursuit, Holland was generally running away from Lopez, and it was Lopez's impression that Holland was trying to get away from him.  (PAUF-40). When Lopez pursued Holland with his gun in his hand, Holland looked back at Lopez. (PAUF-41).  When Holland said, " I will shoot you" various times, he was running away from Lopez.  (PAUF-42).  When Holland was running from Lopez, his back was generally toward Lopez.  (PAUF-43).  During the foot pursuit, the distance between Lopez and Holland was approximately ten yards.  (PAUF-44).  Lopez was illuminating Holland with his flashlight as he ran after him. (PAUF-45).  During the first nine times that Holland stated "I will shoot" or "I will shoot you," Lopez could not see an object in Holland's hand, and it did not appear to Lopez that Holland was turning toward Lopez to shoot him. (PAUF-46).  After Holland said, "I will shoot you" the first time, Lopez did not seek cover or tactically distance himself.  (PAUF-47).  When Holland said, "I will shoot you" for the last time, he was still running away from Lopez, and Lopez was still generally looking at Holland's back.  (PAUF-48).

Lopez fired six shots at Holland. (PAUF-49). When Lopez fired his shots, the distance between Lopez and Holland was approximately 25 feet. (PAUF-50). When Lopez fired his shots, Holland was still moving away from Lopez. (PAUF-51). Holland never extended his right arm towards Lopez. (PAUF-52). Holland was never directly facing Lopez immediately before or during the shots. (PAUF-53). Lopez never saw Holland in a shooting stance. (PAUF-54). Lopez never specifically identified a gun in Holland's hand or on his person at any time before or during the shooting. (PAUF-55). Holland never told Lopez that he had a gun. (PAUF-56). Lopez never communicated over his police radio that he thought Holland had a gun. (PAUF-57). Lopez never told Holland to "drop it." (PAUF-58). Lopez never gave Holland a verbal warning that he was going to shoot him. (PAUF-59).

Lopez alleges he saw an object in Holland's hand for approximately a fraction of a second before he fired his shots. (PAUF-60). Lopez could not see where the object was during the time that he was firing his shots. (PAUF-61). At the time of the shooting, Lopez anticipated that backup officers were on the way. (PAU-62). One shot struck Holland in the upper left buttock and one shot struck him on the back of his left thigh. (PAUF-63).

Deputy Hillebrand arrived within approximately 60 seconds after hearing Lopez's broadcast that he had "one running." (PAUF-64). Sgt. Rios arrived on scene approximately 30 seconds after Deputy Hillebrand arrived on scene. (PAUF-65). After the shooting, Hillebrand asked Lopez, "Do we have a gun?" or "Did he have a gun?" and Lopez responded that he did not know. (PAUF-66). When Lopez was on scene after the shooting, Lopez did not state that he saw a gun or that Holland had a gun. (PAUF-67). Also when Lopez was on scene after the shooting, Lopez did not tell responding officers to look for a gun and did not tell responding officers that Holland had turned toward him. (PAUF-68-69). After the shooting, no gun was found on the ground or around Holland's body. (PAUF-70). After the

1    shooting, Lopez agreed that the cell phone did not look like a gun. (PAUF-71).

2   **III.**   **LEGAL STANDARD**

3       On a motion for summary judgment, the Court must view the evidence in the

4 light most favorable to non-moving party. Summary judgment cannot be granted

5 where a genuine dispute exists as to "material facts." Fed. R. Civ. P. 56 (c). A factual

6 dispute is "genuine" where "the evidence is such that a reasonable jury could return a

7 verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258

8 (1986). All reasonable inferences must be drawn in the opposing party's favor both

9 where the underlying facts are undisputed and where they are in controversy.

10 Importantly, even entirely circumstantial evidence is sufficient to create a triable issue

11 of fact. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). The court's function

12 is not to weigh the evidence and determine the truth of the matter but to determine

13 whether there is a genuine issue for trial. *United States v. One Parcel of Real Prop.*,

14 904 F.2d 487, 491–92 (9th Cir. 1990). Further, Rule 56 must be construed "with due

15 regard" for the rights of persons asserting claims and defenses that are adequately

16 based in fact to have those claims and defenses tried by a jury. *Celotex Corp. v.

17 Catrett,* 477 U.S. 317, 327 (1986). Summary judgment is a drastic remedy and

18 therefore trial courts should act "with caution" in granting summary judgment.

19 *Anderson*, 477 U.S. at 255.

20   **IV.**   **ARGUMENT**

21    **A. The Shooting Was Excessive**

22      Fourth Amendment claims of excessive force are analyzed under an objective

23 reasonableness standard." *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528,

24 537 (9th Cir. 2010). When evaluating a claim of excessive force, the inquiry is

25 whether the officers' actions are "objectively reasonable" in light of the facts and

26 circumstances confronting them. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th

27 Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "This inquiry

28 requires a careful balancing of the nature and quality of the intrusion on the

1    individual's Fourth Amendment interests against the countervailing governmental
2    interest at stake." *Id.*  The deciding court must "balance the amount of force applied
3    against the need for that force." *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir.
4    2010).  "Certain principles are clearly established . . . that implement the fundamental
5    rules regarding the use of deadly force." *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th
6    Cir. 1997).

7        The shots fired by Lopez constitute the greatest possible amount of force;
8    therefore, they require the highest justification. "The intrusiveness of a seizure by
9    means of deadly force is unmatched." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985).
10   "Law enforcement officers may not shoot to kill unless, at a minimum, the suspect
11   presents an immediate threat [of death or serious bodily injury] to the officer or others
12   or is fleeing and his escape will result in serious threat of injury to persons." *Harris*,
13   126 F.3d at 1201.  Governmental interests to balance against the type of force used
14   include the following factors: "(1) the severity of the crime; (2) whether the suspect
15   posed an immediate threat [of death or serious bodily injury] to the officers' or
16   public's safety; and (3) whether the suspect was resisting arrest or attempting to
17   escape." *Espinosa*, 598 F.3d at 537.  Other significant factors to consider are the
18   availability of alternative methods to effectuate an arrest or overcome resistance and
19   whether the officer gave a warning that deadly force would be used.  *Nelson v. City of
20   Davis*, 685 F.3d 867, 882 (9th Cir. 2012); *Smith v. City of Hemet*, 394 F.3d 689, 701
21   (2005) (en banc); *Headwaters v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir.
22   2000).

23       The first factor—the severity of the crime—weighs in Plaintiffs' favor, as it is
24   undisputed that Lopez was responding to a minor vehicle code infraction and not to a
25   serious or violent crime.  Lopez had no information that Holland had injured anyone
26   and no information about Holland's criminal history.

27       The second and "most important" factor is whether Holland posed an
28   immediate threat of death or serious bodily injury to Lopez or others at the time of the

shooting. *George v. Morris,* 736 F.3d 829, 838 (9th Cir. 2013). A threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed. (PAUF-75). Police officers are trained that potential threat or potential deadly threat is not enough to justify the use of deadly force. (PAUF-76). Police officers are also trained that a fear of future harm is insufficient to use deadly force. (PAUF-77). Lopez's "desire to resolve quickly a potentially dangerous situation" does not, on its own, justify the use of deadly force. *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). Any fear that Lopez had was subjective, and officers are trained that a subjective fear is insufficient to justify using deadly force. Clark Decl. at ¶17f. "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle*, 272 F.3d at 1281.

Taking the facts and all reasonable inferences therefrom in the light most favorable to Plaintiffs, a reasonably well-trained police officer in Lopez's position would not have formed an objectively reasonable belief that Holland posed an immediate threat of death or serious bodily injury to any person at the time of the shots. It is undisputed that Holland was unarmed, and he therefore did not have the "present ability" to cause serious bodily injury or death to Lopez when Lopez was pursuing him with his gun drawn. Both police practices experts agree that under the facts of this case, Holland's statement, "I will shoot" or "I will shoot you" does not alone justify Lopez's use of deadly force. (PAUF-83). Lopez did not shoot or attempt to shoot Holland the first nine times that Holland made this statement. When Lopez fired his shots, the distance between Lopez and Holland was approximately 25 feet.

When Holland said, "I will shoot you" for the last time, he was still running away from Lopez, and Lopez was still generally looking at Holland's back. Holland was never directly facing Lopez immediately before or during the shots. One shot struck Holland in the upper left buttock and one shot struck him on the back of his left thigh, indicating that Holland was facing away from Lopez during at least some of the shots. Holland did not take a shooting stance or extend his arm towards Lopez. During the foot pursuit, Holland looked back at Lopez when Lopez had his gun drawn. It was not objectively reasonable for Lopez to believe that Holland would attempt to shoot an officer who had a gun drawn.

Lopez never specifically identified a gun in Holland's hand or on his person at any time before or during the shooting, and Holland never told Lopez that he had a gun. According to Plaintiffs' expert, Mr. Clark, a reasonable officer would have been able to distinguish a cell phone from a firearm. A cell phone does not have the identifying features of a firearm such as a barrel, trigger, trigger guard, grip, or magazine. (PAUF-85-86). According to Mr. Clark, in order to justify shooting in this case, Lopez would have to have seen a gun and seen that gun coming toward him, which was not the case here. (Clark Decl. at ¶12). Where an officer's particular use of force is based on a mistake of act, the Court must ask whether a reasonable officer would have or should have accurately perceived that fact." *Torres v. City of Madera*, 648 F.3d 1119, 1123 – 24 (9th Cir. 2011). "Not all errors in perception or judgment, however, are reasonable," and while courts "do not judge the reasonableness of an officer's actions 'with the 20/20 vision of hindsight,' nor does the Constitution forgive an officer's every mistake." *Id.* (quoting *Graham*, 490 U.S. at 396). Here, a reasonable jury could conclude that Lopez should have recognized that the object in Holland's hand was a cell phone and not a gun. Courts "recognize that 'police officers are often forced to make split-second judgments . . .'" *Id.* at 1124 (quoting *Graham*, 490 U.S. at 397).

With respect to the third factor—whether Holland was resisting arrest or attempting to escape—both police practices experts in this case agree that Lopez could not shoot Holland simply for running away.  (PAUF-82).  There are no objective facts to support Lopez's alleged belief that Holland would have posed an immediate threat of death or serious bodily injury to the community if Lopez allowed Holland continue to run and set up a perimeter.  (Clark Decl. at ¶ 13).  The additional factors—Lopez's failure to give Holland a verbal warning before shooting him, and the availability of reasonable alternatives to shooting, also weigh in Plaintiffs' favor.  It is undisputed that Lopez did not give Holland a verbal warning that he was prepared to use deadly force, and on Plaintiffs' facts, it would have been feasible to do so.  Lopez anticipated that backup officers were on the way, and he could have taken cover, created distance while observing Holland, and set up a perimeter rather than shooting.

The Ninth Circuit has cautioned that where, as here, the shooting officer is the only surviving witness, the court "must carefully examine the evidence in the record to determine whether [the officer's] testimony is internally consistent and consistent with other known facts." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 791 (9th Cir. 2014); *see also Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("[T]he court may not simply accept what may be a self-serving account by the police officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably.").  "Nobody likes a game of 'he said, she said,' but far worse is the game of 'we said, he's dead.' Sadly, this is too often what we face in police shooting cases like this one." *Cruz v. City of Anaheim*, 765 F.3d 1076, 1077 (9th Cir. 2014).  Evidence, including circumstantial evidence, indicates that Lopez never believed that Holland had a gun in his hand.  At a distance of 25 feet and when using his flashlight, Lopez would have recognized that Holland did not have a gun in his hand.  Holland overreacted when he fired his shots, and an overreaction in using force is a use of excessive force.  (Clark Decl. at ¶17i).

Lopez did not give a recorded interview to law enforcement after the shooting. (PAUF-72).  The first documented time Lopez stated that Holland turned toward him with an object in his hand was at his deposition.  (PAUF-73).  Lopez never communicated over his police radio that he thought Holland had a gun.  When additional officers responded to the scene after the shooting, Lopez did not tell those officers that Holland had turned toward him, that he thought Holland had a gun, or that the officers needed to look for a gun.  Lopez also never told Holland to "drop it." This is circumstantial evidence that Lopez never believed that Holland had a gun in his hand—otherwise, he would have communicated this information over the radio and to the responding officers. The reasonable inference that this Court must draw in Plaintiffs' favor is that Holland did not turn toward Lopez and that Lopez did not see an object in Holland's hand.  Importantly, Defendants' police practices expert agrees that it would have been inappropriate for Lopez to shoot Holland under the facts of this case if Holland had not turned toward Lopez with an object that looked like a gun in his hand.  (PAUF-84).  Even if the shooting had occurred as Lopez described, the shooting would still be excessive and unreasonable because Lopez never identified a gun in Holland's hand.

**B. Fourteenth Amendment**

The Fourteenth Amendment is violated when official conduct "shocks the conscience." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  When officers have time to deliberate, "then an officer's 'deliberate indifference' may suffice to shock the conscience." *Id*. (citing *Porter v. Osborn*, 546 F.3d 1131, 1136-37 (9th Cir. 2008)); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 692 (9th Cir. 2019) (holding that deliberation may be practical even without an extended timeline of events). "Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions." *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013); *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006).  The Ninth Circuit has indicated that a standard higher than "deliberate

indifference" should apply only in situations "that escalate so quickly that the officer must make a snap judgment." *Porter*, 546 F.3d at 1137-40.  The "snap judgment" to use deadly force must be a reaction to an unforeseen escalation by the subject. *George*, 736 F.3d at 1230; *see County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

Where the facts regarding practical deliberation are disputed, only the jury can determine which of the two "shocks the conscience" standards apply. *Greer v. City of Hayward*, 229 F. Supp. 3d 1091 (N.D. Cal. 2017); *C.E.W. v. City of Hayward*, 2015 WL 1926289 *13 (N.D. Cal. Apr. 27, 2015) (citing *Duenez v. City of Manteca*, 2013 WL 6816375 *14-15 (E.D. Cal. Dec. 23, 2013) ("[T]he determination of which situation [the officer] actually found himself in is a question of fact for the jury, so long as there is sufficient evidence to support both standards.").  A reasonable jury could find that Lopez had time to deliberate and that Lopez's subjective and alleged belief that Holland had a gun in his hand and was going to shoot him was unreasonable.  A reasonable jury could consider that Holland never stated he had a gun, Holland never took a shooting stance, Lopez never specifically identified a gun, Lopez did not make radio communications that he thought Holland had a gun, Lopez did not tell responding officers that he thought Holland had a gun, and Lopez never gave a verbal warning before using deadly force.  A reasonable jury could conclude that Lopez had time to seek cover, create distance, give a verbal warning, and give further commands such as "drop it."

Taking the facts in the light most favorable to the Plaintiffs, Lopez's shooting of Holland "shocks the conscience" no matter which standard is applied.  Under either standard, there was no legitimate law enforcement objective in shooting an unarmed man who had not injured anyone and who was running away.  Additionally, officers cannot "unnecessarily create their own sense of urgency." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1135 (9th Cir. 2019) (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1126 (9th Cir. 2011).  "Reasonable triers of fact can, taking the totality of the

circumstances into account, conclude that an officer's poor judgment or lack of preparedness caused him or her to act unreasonably, 'with undue haste.'" *Id.*  Here, a reasonable jury could consider that Lopez made a poor tactical decision when he pursued Holland on foot in the dark as a solo officer rather than waiting for backup officers to arrive and assist in setting up a perimeter.

### C. Lopez is Not Entitled to Qualified Immunity

Qualified immunity should be denied in this case for five reasons.  First, disputed issues of material fact preclude granting qualified immunity on summary judgment.  *See Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Glenn*, 673 F.3d at 870, fn. 7 (citing *Espinosa*, 598 F.3d at 532); *Cunningham v. City of Wenatchee*, 345 F3d 802, 809 (9th Cir. 2003); *Santos v. Gates*, 287 F.3d 846, 855 n.12 (9th Cir. 2002) (declining to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom"); *Brosseau v. Haugen*, 543 U.S. 194, 206 (2004) (Stevens J., dissenting) (the reasonableness of an officer's belief "…is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law…'"); *Wilkins v. City of Oakland,* 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate).

In *Longoria v. Pinal County*, the Ninth Circuit reiterated that "[w]here the facts are disputed, their resolution and determinations of credibility 'are manifestly the province of a jury.'" 873 F.3d 699, 710 (9th Cir. 2017) (quoting *Wall v. County of Orange*, 364 F.3d 1107, 1110 (9th Cir. 2004)).  In this case, the key material factual disputes bearing on the reasonableness of Lopez' use of deadly force include whether Holland ever turned toward Lopez, whether Lopez ever saw an object in Holland's hand, whether it was feasible for Lopez to give Holland a verbal warning prior to using deadly force, whether Lopez had other reasonable alternative

1   measures to shooting, and whether a reasonable officer in Lopez's position would

2   have distinguished a gun from a cell phone.  The jury should be permitted to

3   evaluate Lopez's credibility in resolving these disputes.

4        Second, viewing the facts in the light most favorable to Plaintiffs and taking all

5   reasonable inferences therefrom, this case falls within the "obvious" as being a

6   constitutional violation.  *See, e.g.*, *Estate of Najera Aguirre v. Cnty. of Riverside*, 29

7   F.4th 624, 629 (9th Cir. 2022) ("no 'body of relevant case law' is necessary in an

8   'obvious case' like this one") (citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021));

9   *see Hernandez v. City of Huntington Beach*, 798 Fed. Appx. 85, 88 (9th Cir. 2019)

10  (Schroeder, dissenting) ("The pertinent facts are clear. There was no deadly weapon …

11  The officers ... should not be granted immunity on the theory that we do not yet have a

12  decision saying the obvious."); *Harris*, 126 F.3d at 1204 ("a general constitutional rule

13  already identified in the decisional law may apply with obvious clarity to the specific

14  conduct in question.") (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

15  "[I]n an 'obvious case,' the standards set forth in *Graham* and *Garner*, though 'cast at a

16  high level of generality,' can 'clearly establish' that a constitutional violation has

17  occurred 'even without a body of relevant case law.'" *Estate of Clemente Najera*

18  *Aguirre v. County of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) (quoting *Rivas-*

19  *Villegas*, 595 U.S. at 6 and *Brosseau*, 543 U.S. at 199); *Taylor v. Riojas*, 592 U.S. 7, 8-9

20  (2020) (reaffirming *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002)).  Police officers have

21  long been on notice that they cannot justify using deadly force where the suspect poses

22  no immediate threat of death or serious bodily injury to the officer or others.  *Garner*,

23  471 U.S. at 11.  In this case, Holland was unarmed and running away at the time of the

24  shooting.  Both experts agree that Lopez cannot justify shooting for running away or

25  stating, "I will shoot you."

26       Third, the law was clearly established that Lopez could not use deadly force under

27  these facts.  As the Ninth Circuit recently stated, "[t]hough officers must be fairly on

28  notice that their conduct was unconstitutional, defining the 'right allegedly violated' in

too much detail allows 'officials, and future defendants, to define away all potential claims.'" *Scott*, ___ F.4th at *7 (citing *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1158 (9th Cir. 2000)); *see also Ohlson v. Brady*, 9 F.4th 1156, 1166–67 (9th Cir. 2021) (there need not be a case "directly on point"); *Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (advising against casting an allegedly violated right too particularly); *Ziglar v. Abbasi*, 582 U.S. 120, 151-52 (2017) ("an officer might lose qualified immunity even if there is no reported case "directly on point."). The Ninth Circuit has been "particularly mindful of this principle in the context of Fourth Amendment cases, where the constitutional standard—reasonableness—is always a very fact-specific inquiry. If qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011).

For example, in *Longoria*, *supra*, the Ninth Circuit denied qualified immunity to the defendant police officer because "a reasonable jury could also conclude that [the officer defendant] knew or should have known that [the decedent] was not holding a gun and that he did not assume a "shooter's stance" and could find that [the officer defendant's] statements to the contrary were not credible." *Longoria*, 873 F.3d at 711. In *Longoria*, as in this case, the defendant police officer was the only witness to the shooting. This Court should follow *Longoria* and deny qualified immunity to Lopez in part because Lopez's credibility as the only witness to this shooting must be determined by a jury. As in *Longoria*, this Court should also consider other objective evidence in this case, including the fact that Holland was unarmed, the radio communications, and Lopez's statements made to responding officers after the shooting. In denying qualified immunity, the *Longoria* court reiterated that *Garner* clearly establishes an unarmed person's right to be free from deadly force. *See also Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1018 (9th Cir. 2017) (*affirmed*, June 25, 2018) (denying qualified immunity where officers gave differing accounts as to whether decedent turned towards them and

1  holding that where the state of the law at the time of the incident provides fair warning,

2  the level of specificity required by recent Supreme Court jurisprudence is satisfied).

3     In *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014), the Ninth

4  Circuit affirmed the denial of summary judgment and qualified immunity where there

5  was an issue of fact as to whether a potentially armed suspect reached for his waistband.

6  The *Cruz* court considered that a jury might find the officer defendants' story

7  implausible.  765 F.3d at 1080.  In *Cruz*, the Ninth Circuit placed weight on

8  circumstantial evidence supporting that Cruz did not reach for his waistband, including

9  that he did not have a gun on him ("so why would he have reached for his waistband?"),

10  and he was surrounded by officers with guns drawn. 765 F.3d at 1079-80.  The *Cruz*

11  court considered that "it would have been foolish" for Cruz "to have tried to fast-draw

12  his weapon in an attempt to shoot his way out.  But for him to make such a gesture when

13  no gun is there makes no sense whatsoever.  A jury may doubt that Cruz did this." *Id*.

14  This Court should follow *Cruz* and deny qualified immunity to Lopez.  As in *Cruz*,

15  Holland did not have a gun on him.  Also as in *Cruz*, Holland was aware that he was

16  being pursued by an officer who had his gun drawn.  A reasonable jury may doubt

17  Lopez's story that Holland reached for his waistband, that Holland turned toward him,

18  that he thought Holland had a gun, or even that he saw an object in Holland's hand.

19     In *A.K.H. v. City of Tustin*, 837 F.3d 1005, 1009, 1013 (9th Cir. 2016), the

20  Ninth Circuit denied qualified immunity to an officer who alleged that he

21  "believe[ed] that [the suspect, Herrera] had a weapon and he was going to use that

22  weapon on [him]."  In that case, Herrera, who was unarmed, removed his hand

23  from his hoodie pocket and raised it over his head in response to the officers'

24  command to show his hands. *Id.* at 1009.  The officer defendant alleged that

25  Herrera "charged" him.  In denying qualified immunity, the Ninth Circuit reasoned

26  that it was clearly established under *Garner* that "[a] police officer may not seize

27  an unarmed, nondangerous suspect by shooting him dead."  471 U.S. at 11.

28  Similarly, here, Lopez's subjective fear that Holland could have a weapon is

-15-

1   insufficient to grant qualified immunity.  As in *A.K.H.*, Lopez commanded

2   Holland to show his hands, and Holland was unarmed.  This case is even stronger

3   than *A.K.H.* because Holland never extended his arm toward Lopez, never took a

4   shooting stance, and never raised his arm over his head.  Additionally, whereas the

5   officers in *A.K.H.* had information prior to the shooting that Herrera had injured

6   his ex-girlfriend and was a suspected gang member, here, Lopez had no

7   information that Holland had injured anyone and no information about his criminal

8   history.  Therefore, this Court should follow *A.K.H.* and deny qualified immunity

9   to Lopez.

10      Additionally, courts have denied qualified immunity based on the officer's failure

11   to give the suspect a verbal warning that deadly force would be used prior to shooting.

12   *Garner*, 490 U.S. at 397; *see, e.g.*, *Forrett v. Richardson*, 112 F.3d 416, 420 (9th Cir.

13   1997); *Jacquez v. City of San Jose*, Case No. 16-cv-05330-NC Doc. No. 84 (Order re

14   MSJ) at pp. 12:20-28 (denying qualified immunity); *see also Bowles v. City of San Jose*,

15   Case No. 19-cv-01027-NC, Doc. No. 53 (Order re MSJ) at pp. 10:24-11:4, 14:26-15:1

16   (denying qualified immunity and holding that it was clearly established at the time of the

17   shooting that an officer should give a warning before using deadly force, and that

18   whether it was feasible to give a warning before shooting is for the jury to decide).

19      Fourth, police training is also an important factor to consider in the context of

20   qualified immunity. Police officers, including Lopez, are trained that deadly force should

21   only be used when there is an imminent or immediate threat of death or serious bodily

22   injury.  (PAUF-74).  An officer who makes a conscious decision to violate basic training

23   guidelines should not be heard subsequently to claim to have made a reasonable mistake

24   or to have reasonably believed his or her decision to be lawful.  *See Drummond v. City*

25   *of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2004).  Officers are trained that they must

26   pay particular attention to the hands of a suspect because hands hold weapons—in

27   particular, guns.  Furthermore, police officers have a "duty to continually assess and

28

1    reassess the level of threat posed by an individual when deciding whether to employ
2    lethal force.

3          Fifth, although Plaintiffs believe that the prior cases cited herein put the
4    defendant deputies sufficiently on notice that their uses of deadly force against
5    Holland was excessive and unreasonable, the Supreme Court "has firmly rejected
6    the notion that 'an official action is protected by qualified immunity unless the very
7    action in question has previously been held unlawful.'" *Brosseau*, 543 U.S. at 205
8    (Stevens, J., dissenting) ("The Court's search for relevant case law applying
9    the *Garner* standard to materially similar facts is both unnecessary and ill advised)
10   (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *K.H. Through Murphy*
11   *v. Morgan,* 914 F.2d 846 (7th Cir. 1990) ("There has never been a section 1983 case
12   accusing welfare officials of selling foster children into slavery; it does not follow that
13   if such a case arose, the officials would be immune from damages liability because no
14   previous case had found liability in those circumstances.").

15        **D. Battery and Negligence**

16         Plaintiffs' claims for battery and negligence are even stronger than their claim
17   for excessive force because claims for battery and negligence both contemplate pre-
18   shooting tactics and conduct.  *See, e.g.*, Judicial Council of California Civil Jury
19   Instructions ("CACI") 1305B (Battery by Peace Officer, Deadly Force), CACI 441
20   (Negligent Use of Deadly Force by Peace Officer).  Defendants appear to contend
21   that the California Supreme Court in *Hayes v. County of San Diego*, 57 Cal. 4th 622
22   (2013), specifically limited the broader analysis with considerations for pre-force
23   conduct and tactics to a claim for negligence only, but this is not true.  *Hayes* does
24   not suggest that state law battery claims should not consider pre-force conduct or
25   tactics.  *Hayes* only answered a specific question posed to the California Supreme
26   Court—"[w]hether under California negligence law, liability can arise from tactical
27   conduct and decisions employed by law enforcement preceding the use of deadly
28   force", because this was the sole issue certified to it.  *Hayes*, 57 Cal. 4th at 626.  The

*Hayes* court did not consider whether such liability can arise under California battery law. To the contrary, CACI 1305B specifically instructs that the jury may consider the officer's "tactical conduct and decisions before using deadly force."

Indeed, courts have evaluated both battery and negligence claims under the same standard by taking into consideration pre-force conduct and tactics. *See, e.g., McLeod v. City of Redding*, No. 2:22-CV-00585 WBS JDP, 2024 WL 3011227, at *8 (E.D. Cal. June 12, 2024) (finding that the analysis on the state law battery claim "requires the same 'totality of the circumstances' inquiry applied to negligence claims" including pre-shooting conduct) (citing *Hayes*, 57 Cal. 4th at 638); *Villalobos v. City of San Maria*, 85 Cal. App. 5th 383. 389 (2022) (evaluating both battery and negligence claims against police officers under the reasonableness standard articulated in *Hayes*); *Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 937 (2020) ("[T]he California] Supreme Court 'has long recognized that peace officers have a duty to act reasonably when using deadly force and that the reasonableness of an officer's conduct is determined in light of the totality of circumstances, including the tactical conduct and decisions leading up to the use of deadly force.'") (quoting *Hayes*, 57 Cal. 4th at 762-63).

In evaluating whether Lopez's use of deadly force was unreasonable and negligent in violation of California law, a reasonable jury could find that Lopez's tactical conduct and decisions leading up to the shooting were inappropriate, unreasonable, negligent, and contrary to basic police training. For example, a reasonable jury could find that Lopez should not have continued to pursue Holland on foot as a solo officer if he reasonably believed Holland to be armed, and that this poor tactic led to the shooting. A reasonable jury could also determine that a reasonably well-trained officer in Lopez's position would have ceased the foot pursuit after the first time that Holland stated, "I will shoot" or words to that effect, and would have created distance, set up a perimeter to contain and apprehend Holland. Lopez anticipated that backup officers were on the way, and Hillebrand arrived on scene

within approximately one minute of Lopez's "one running" dispatch.  A reasonable jury could also consider that Lopez engaged in pre-shooting tactical misconduct when he: left the driver of the traffic stop alone in the car; failed to specifically request backup; failed to give Holland sufficient commands or a verbal warning that deadly force would be used, including not giving Holland a command to "drop it"; and failed to create distance or seek cover.  (PAUF-87).

### E. Bane Act

Lopez' misconduct in shooting Holland as described above also supports Plaintiffs' Bane Act claim.  In discussing the Bane Act, the Ninth Circuit in *Reese v. County of Sacramento* stated, "it is not necessary for the defendants to have been 'thinking in constitutional or legal terms at the time of the incident[], because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'"  888 F.3d 1030 (9th Cir. 2018) (quoting *United States v. Reese*, 2 F. 3d 870 (9th Cir. 1993).  Whether Lopez "understood [he was] acting unlawfully [is] not a requirement.  Reckless disregard of the "right at issue" is all that [is] necessary." *Id.* at 804.  Here, as set forth above, there are a number of facts that certainly establish that Lopez acted with reckless disregard for Holland's constitutional right to be free from excessive force, such that summary judgment should be denied on this claim.  Lopez showed reckless disregard for Holland's life and civil rights when he shot the unarmed Holland six times without identifying a firearm in Holland's hand and without issuing a verbal warning that deadly force would be used.

### F. Punitive Damages

Plaintiffs' entitlement to punitive damages is a question for the jury.  *See Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 821 (1979); *Herrera v. Las Vegas Metro. Police Dept.*, 298 F. Supp. 2d 1043, 1055-56 (D. Nev. 2004).  In light of the disputed issues of material fact bearing on the reasonableness of Lopez's use of deadly force, this Court cannot find that Plaintiffs are not entitled to punitive

damages as a matter of law. *See, e.g., Campos v. City of Merced*, 709 F. Supp. 2d 944, 967 (E.D. Cal. 2010).  In *Smith v. Wade*, 461 U.S. 30 (1983), the Supreme Court concluded that punitive damage awards "did not require a showing of actual malicious intent; rather, [federal and state courts] permit [] punitive awards on variously stated standards of negligence, recklessness, carelessness, or other culpable conduct short of actual malicious intent."  461 U.S. at 45.  Here, a reasonable jury could resolve the factual disputes in Plaintiffs' favor and award punitive damages on any of these standards.

## V.   <u>CONCLUSION</u>

For each of the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion for Summary Judgment.


Dated: August 30, 2024          LAW OFFICES OF DALE K. GALIPO


By: _____ */s/ Renee V. Masongsong* _____
          Dale K. Galipo
          Renee V. Masongsong