Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
**LAW OFFICES OF DALE K. GALIPO**
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333 / Fax: (818) 347-4118

*Attorneys for Plaintiffs, A.H., et al.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.H., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>COUNTY OF SAN BERNARDINO and JUSTIN LOPEZ,<br><br>        Defendants. | Case No. 5:23-cv-01028-JGB-SHK<br><br>*Assigned to*:<br>Hon. District Judge Jesus G. Bernal<br>Hon. Mag. Judge Shashi H. Kewalramani<br><br>**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFFS' ADDITIONAL MATERIAL FACTS**<br><br>Date:     September 23, 2024<br>Time:    9:00 a.m.<br>Crtrm:   Courtroom 1<br>          3470 Twelfth St.<br>          Riverside, CA 92501<br><br>*[Filed concurrently with Plaintiffs' Memorandum of Points and Authorities; Declaration of Renee V. Masongsong and Exhibits thereto; Declaration of Roger A. Clark]* |

## PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFFS' ADDITIONAL MATERIAL FACTS

Pursuant to Local Rule 56-2 and this Court's Standing Order (Dkt. 12), Plaintiffs A.H. and H.H., by and through their guardian *ad litem* Crystal Hanson, Chloe Holland (formerly referred to as C.H.) and Patricia Holland, respectfully submit their Statement of Genuine Disputes of Material Fact, and Plaintiffs' Additional Material Facts.

| DUF No. | Defendants' Uncontroverted Facts (DUF) | Defendants' Supporting Evidence | Plaintiffs' Response |
|---------|----------------------------------------|----------------------------------|----------------------|
| 1. | On June 21, 2022, at approximately 2 a.m., San Bernardino County Sheriff's Department Deputy Justin Lopez (Deputy Lopez") conducted a traffic stop on a silver Ford Explorer in the area of US Route 395 and Cactus Road, in Adelanto. | Lopez Depo. (Ex. "A") at 8:22-24, 18:1-5, 13-16; Hillebrand Depo. (Ex. "B") at 10:19-22, 13:2-5; Hanson Interview Audio (Ex. "C") at 9:40-10:00; Hanson Interview Transcript (Ex. "D") at 8:12-14; Rios Depo. (Ex. "G") at 12:2-14. | Undisputed. |
| 2. | Deputy Lopez broadcasted the Explorer did not have license plates, but later stated that the vehicle had an obstructed rear license plate. | Lopez Depo. (Ex. "A") at 17:5-19, 20:5-15; Lopez Audio (Ex. "E") at 0:00-0:15; Lopez Audio Transcript (Ex. "F") at 2:1-9. | Undisputed. |
| 3. | Deputy Lopez made contact with the driver, Robert Hanson ("Hanson"), and the passenger who identified himself as Andrew Atkins, later identified by investigators as Shane Holland ("Holland"). | Lopez Depo. (Ex. "A") at 21:2-19, 23-24, 23:14-16, 68:19-22, 69:1-3; Lopez Audio (Ex. "E") at 1:15-1:58; Lopez Audio Transcript (Ex. "F") at 3:12-4:7; Hanson Interview Audio (Ex. "C") at 10:27-11:25; Hanson Interview Transcript | Undisputed. |

| | | | |
|---|---|---|---|
| | | (Ex. "D") at 8:18-24, 19:3. | |
| **4.** | Deputy Lopez asked Hanson if he had his license and registration, which Hanson stated he did not. | Lopez Depo. (Ex. "A") at 22:11-15; Lopez Audio (Ex. "E") at 0:15-0:50, 1:57-2:05; Lopez Audio Transcript (Ex. "F") at 2:10-23, 4:9-12; Hanson Interview Audio (Ex. "C") at 10:00-10:27; Hanson Interview Transcript (Ex. "D") at 8:12-17. | Undisputed. |
| **5.** | Deputy Lopez also asked if either Hanson or Holland was on probation or parole, Hanson stated no. | Lopez Audio (Ex. "E") at 0:15-0:50; Lopez Audio Transcript (Ex. "F") at 2:14-19. | Undisputed. |
| **6.** | Holland also told Deputy Lopez that he did not have an ID. | Lopez Depo. (Ex. "A") at 22:16-17; Lopez Audio (Ex. "E") at 1:05-1:18; Lopez Audio Transcript (Ex. "F") at 3:9-13. | Undisputed. |
| **7.** | Deputy Lopez advised the subjects he would return to his patrol vehicle to conduct a records check and did so over the radio through dispatch. | Lopez Depo. (Ex. "A") at 26:1-7, 27:14-22; Lopez Audio (Ex. "E") at 2:00-3:30; Lopez Audio Transcript (Ex. "F") at 4:16-24; Hanson Interview Audio (Ex. "C") at 11:00-11:20; Hanson Interview Transcript (Ex. "D") at 9:1-2. | Undisputed. |
| **8.** | When Deputy Lopez was at his patrol vehicle, Hanson asked Holland "what are you doing," regarding giving Deputy Lopez somebody else's name. | Hanson Interview Audio (Ex. "C") at 11:20-11:35; Hanson Interview Transcript (Ex. "D") at 9:4-5. | Objection: Hearsay; Irrelevant on the grounds that it was unknown to Lopez at the time of the shooting. |
| **9.** | Holland told Hanson that he had a warrant for his arrest and he | Hanson Interview Audio (Ex. "C") at 11:25-12:50; Hanson | Objection: Hearsay; Irrelevant on the grounds that it was |

| | | | |
|---|---|---|---|
| | was going to be incarcerated for a long time. | Interview Transcript (Ex. "D") at 9:6-7, 10, 16-17, 24-25. | unknown to Lopez at the time of the shooting. At the time of the shooting, Lopez had no information that Holland had a criminal record and no information that he had ever committed an act of violence against another person. "Ex. 1" (Lopez Depo.) at 49:8-13; "Ex. 4" (Sanchez Depo.) at 21:13-20. |
| 10. | Holland asked Hanson to "take off" from the traffic stop to distract Deputy Lopez and allow Holland to flee. | Hanson Interview Audio (Ex. "C") at 11:46-12:50; Hanson Interview Transcript (Ex. "D") at 9:11-12. | Objections: Hearsay; Irrelevant on the grounds that it was unknown to Lopez at the time of the shooting. |
| 11. | Hanson refused to assist Holland and said he was not going to get into trouble for Holland. | Hanson Interview Audio (Ex. "C") at 11:46-12:50; Hanson Interview Transcript (Ex. "D") at 9:13-15, 18-23, 10:1-3. | Objections: Hearsay; Irrelevant on the grounds that it was unknown to Lopez at the time of the shooting. |
| 12. | Holland chose to run from the passenger side of the vehicle into the desert. | Hanson Interview Audio (Ex. "C") at 12:50-13:22; Hanson Interview Transcript (Ex. "D") at 10:4-14. | Objections: Hearsay; Calls for speculation as to Holland's state of mind; Irrelevant on the grounds that this was unknown to Lopez at the time of the shooting. |
| 13. | Deputy Lopez saw Holland get out of the vehicle and told him to get back in the vehicle, but Holland started | Lopez Depo. (Ex. "A") at 27:5-10, 28:1-3, 31:2-5, 50:20-23, 25, 51:1; Lopez Audio (Ex. "E") at 3:30-3:35; | Undisputed. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | | | |
|---|---|---|---|---|
| | | fleeing from the traffic stop. | Lopez Audio Transcript (Ex. "F") at 4:25. | |
| 14. | | Deputy Lopez notified dispatch of the foot pursuit on the radio. | Lopez Depo. (Ex. "A") at 66:15-17; Lopez Audio (Ex. "E") at 3:30-3:40; Lopez Audio Transcript (Ex. "F") at 5:1; Hillebrand Depo. (Ex. "B") at 13:6-10; Rios Depo. (Ex. "G") at 13:14-23, 15:7-14. | Disputed to the extent that Lopez only stated, "I've got one running." Lopez Audio Transcript (Ex. "F") at 5:1. |
| 15. | | Deputy Lopez began running after Holland, and told Holland to get on the ground. | Lopez Depo. (Ex. "A") at 31:9-10; Lopez Audio (Ex. "E") at 3:30-3:45; Lopez Audio Transcript (Ex. "F") at 5:3. | Undisputed. |
| 16. | | Deputy Lopez believed that Holland had something in his waistband, so he commanded Holland multiple times to "Let me see your hands." | Lopez Depo. (Ex. "A") at 28:10-21, 42:6-13; Lopez Audio (Ex. "E") at 3:30-4:50; Lopez Audio Transcript (Ex. "F") at 5:3-14. | Objection: Compound. |
| 17. | | In response, Holland said "I will shoot you" multiple times. | Lopez Depo. (Ex. "A") at 31:22-32:1, 33:22-34:1; Lopez Audio (Ex. "E") at 3:30-4:50; ; Lopez Audio Transcript (Ex. "F") at 5:15-16. | Objections: Calls for speculation that Holland said this in response to the command to show his hands. Otherwise, undisputed. |
| 18. | | Deputy Lopez told Holland to show him his hands a total of 19 times within a period of one minute and nineteen seconds. | Lopez Depo. (Ex. "A") at 42:6-13; Lopez Audio (Ex. "E") at 3:30-4:50; ; Lopez Audio Transcript (Ex. "F") at 5:4-6:11. | Undisputed. |
| 19. | | Holland told Deputy Lopez that he was going to shoot him a total of 10 times during that same period. | Lopez Depo. (Ex. "A") at 16:19-21, 34:2-5, 40:23-41:1; Lopez Audio (Ex. "E") at 3:30-4:50; Lopez Audio Transcript (Ex. "F") at 5:4-6:11. | Disputed to the extent that some of Holland's statements were "I will shoot" as opposed to "I will shoot you." Lopez Audio Transcript (Ex. "F") at 5:4-6:11. |

| | | | | |
|---|---|---|---|---|
| **20.** | Immediately after Holland stated, "I will shoot you" the tenth time, Deputy Lopez fired his weapon six times in quick succession at Holland. | Lopez Depo. (Ex. "A") at 12:25-13:1; Lopez Audio (Ex. "E") at 4:50-4:57; Lopez Audio Transcript (Ex. "F") at 6:11-13. | Objections: Vague and ambiguous as to time and trajectory. Otherwise, undisputed. |
| **21.** | After the shooting, Deputy Lopez immediately put out "shots fired" over the radio and requested medical. | Lopez Audio (Ex. "E") at 4:50-5:55; Lopez Audio Transcript (Ex. "F") at 5:4-6:22; Hillebrand Depo. (Ex. "B") at 15:15-21; Rios Depo. (Ex. "G") at 15:18-21, 25:15-18. | Objection: Irrelevant because Plaintiffs have dismissed their claim for denial of medical care. Otherwise, undisputed. |
| **22.** | Deputy Kristopher Hillebrand ("Deputy Hillebrand") and Sergeant Mark Rios ("Sergeant Rios") heard the broadcast of the foot pursuit, and "shots fired" and arrived within approximately one minute of the shots fired broadcast. | Hillebrand Depo. (Ex. "B") at 15:11-14, 22-25; Rios Depo. (Ex. "G") at 15:15-24, 17:23-18:1. | Disputed to the extent that the radio broadcast indicated that a suspect was running, not that Lopez was engaged in a foot pursuit. "Ex. 3" (Rios Depo.) at 14:9-11.<br><br>Disputed to the extent that Hillebrand testified that he arrived approximately 60 seconds after he heard the "one running" broadcast. "Ex. 2" (Hillebrand Depo.) at 15:11-14, 31:3-6 |
| **23.** | When Deputy Hillebrand arrived he asked Deputy Lopez where is the gun, and Deputy Lopez replied "I don't know.  He said he was going to shoot me." | Lopez Depo. (Ex. "A") at 15:25-16:11, 15-21, 25, 17:1-2, 63:4-17; Lopez Audio (Ex. "E") at 6:10-6:20; Lopez Audio Transcript (Ex. "F") at 6:25-7:4; Hillebrand Depo. (Ex. "B") at 23:8-18, 24:13-19, 25:1-8. | Disputed to the extent that Hillebrand's question included, "Do we have a gun?" or "Did he have a gun?" Lopez Audio Transcript (Ex. "F") at 6:25-7:4; Lopez Audio (Ex. "E") at 6:10-6:20. |
| **24.** | Deputy Lopez handcuffed Holland and then proceeded to pat down Holland to search | Lopez Depo. (Ex. "A") at 60:3-11, 61:1-11; Hillebrand Depo. (Ex. | Undisputed. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | | |
|---|---|---|---|
| | him for weapons and check for injuries. | "B") at 25:20-25, 27:23-28:5. | |
| 25. | After Holland was handcuffed and searched, Deputy Hillebrand called over the radio to notify medical it was clear for them to proceed into the scene. | Hillebrand Depo. (Ex. "B") at 26:1-4. | Objections: Irrelevant because Plaintiffs' denial of medical care claim has been dismissed. Otherwise, undisputed. |
| 26. | When Sergeant Rios arrived, Deputy Lopez asked him to retrieve a medical aid trauma kit from his marked patrol vehicle and Sergeant Rios immediately began to administer medical aid to Holland and requested additional medical assistance. | Lopez Depo. (Ex. "A") at 60:10-11; Lopez Audio (Ex. "E") at 6:25-7:05; Lopez Audio Transcript (Ex. "F") at 7:6-13; Hillebrand Depo. (Ex. "B") at 29:6-13; Rios Depo. (Ex. "G") at 21:13-19, 23:23-24:3, 25:3-10. | Undisputed. Irrelevant because Plaintiffs' denial of medical care claim has been dismissed. |
| 27. | American Medical Response paramedics arrived within approximately five minutes and pronounced Holland deceased. | Hillebrand Depo. (Ex. "B") at 26:14-21, 28:17-29:5; Rios Depo. (Ex. "G") at 25:11-14, 19-22. | Undisputed. Irrelevant because Plaintiffs' denial of medical care claim has been dismissed. |
| 28. | Deputy Lopez did not identify a gun in Holland's hand prior to the shooting and no gun was collected from Holland after the incident | Lopez Depo. (Ex. "A") at 14:9-20, 53:24-54:4; Rios Depo. (Ex. "G") at 20:15-24, 21:1. | Undisputed. |
| 29. | However, based on Holland's statement "I will shoot you," and a black object that was in Holland's right hand at waist level, Deputy Lopez reasonably believed that Holland was in possession of a gun. | Lopez Depo. (Ex. "A") at 16:15-21, 39:9-15, 41:22-42:2, 44:10-45:2, 48:15-18, 51:6-11, 16-18, 52:12-20, 55:3-11, 57:14-22. | Objection: Compound. Disputed that Lopez believed Holland had a gun in his hand. Also disputed that Deputy Lopez's belief that Holland had a gun was reasonable. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFFS' ADDITIONAL MATERIAL FACTS

Assuming Holland had the cell phone in his hand, a reasonable officer would have been able to distinguish a cell phone from a firearm. A cell phone does not have the identifying features of a firearm such as a barrel, trigger, trigger guard, grip, or magazine. Clark Decl. at ¶ 14.

Lopez never specifically identified a gun in Holland's hand or on his person at any time before or during the shooting. "Ex. 1" (Lopez Depo.) at 14:9-19, 15:6-15.

Holland never told Lopez that he had a gun. "Ex. 1" (Lopez Depo.) at 16:15-17, 16:22-24, 48:12-17.

Lopez never communicated over his police radio that he thought Holland had a gun. "Ex. 1" (Lopez Depo.) at 68:6-11; "Ex. 2" (Hillebrand Depo.) at 16:22-25; "Ex. 4" (Sanchez Depo.) at 34:10-13, 54:3-6.

Lopez never saw Holland in a shooting stance. "Ex. 1" (Lopez Depo.) at 59:3-5.

Holland never extended his right arm towards

Lopez. "Ex. 1" (Lopez Depo.) at 58:10-13.

During the first nine times that Holland stated "I will shoot you," Lopez did not see an object in Holland's hand, and it did not appear to Lopez that Holland was turning toward Lopez to shoot him. "Ex. 1" (Lopez Depo.) at 41:5-42:2, 42:17-23.

Lopez never told Holland to "drop it." "Ex. 1" (Lopez Depo.) at 45:3-4.

Lopez alleges that he saw the object in Holland's hand for approximately a fraction of a second before he fired his shots. "Ex. 1" (Lopez Depo.) at 46:1-3.

Lopez did not see where the object was during the time that he was firing his shots. "Ex. 1" (Lopez Depo.) at 45:23-25.

When Lopez was on scene after the shooting, Lopez did not state that he saw a gun or that Holland had a gun. "Ex. 1" (Lopez Depo.) at 63:4-15; "Ex. 2" (Hillebrand Depo.) at 23:24-24:1, 25:9-11; "Ex. 3" (Rios Depo.) at

21:24-22:1, 23:17-22; "Ex. 4" (Sanchez Depo.) at 55:16-20.

An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed. Clark Decl. at ¶; California Penal Code Section 835a(e)(2)).

Under the facts of this case, Holland's statement, "I will shoot" or "I will shoot you" does not alone justify Lopez's use of deadly force. "Ex. 4" (Sanchez Depo.) at 33:21-34:1.

After the shooting, Deputy Hillebrand asked Lopez, "Do we have a gun?" or "Did he have a gun?" and Lopez responded that he did not know. Def. Ex. "E" (Lopez Audio) at 6:10-6:20; "Ex. 1" (Lopez Depo.) at 63:4-15; "Ex. 2" (Hillebrand Depo.) at 23:24-24:1, 25:9-11; "Ex. 3" (Rios Depo.) at 21:24-22:1, 23:17-22; "Ex. 4" (Sanchez Depo.) at 55:16-20; "Ex. 5" (Lopez Belt Recording Transcript) at 6:25-7:2.

| | | | | When Lopez was on scene after the shooting, Lopez did not tell responding officers to look for a gun. "Ex. 2" (Hillebrand Depo.) at 24:1-8; "Ex. 3" (Rios Depo.) at 22:2-12. |
|---|---|---|---|---|
| **30.** | Additionally, Deputy Lopez engaged in a foot pursuit because he reasonably believed that Holland was an immediate danger to him as there was no cover because they were in the middle of the dessert and to the public because Holland was running towards a residential neighborhood. | Lopez Depo. (Ex. "A") at 38:21-39:2, 51:6-11, 16-25, 52:1-20, 67:13-25, 68:1-5. | | Objections: Compound; Irrelevant as it misstates the legal standard as "immediate danger" as opposed to "immediate threat of death or serious bodily injury."<br><br>Disputed that Deputy Lopez's belief that Holland was an immediate danger was reasonable.<br><br>According to Plaintiffs' expert, Roger Clark, a reasonably well trained officer in Deputy Lopez's position would not have continued to pursue Mr. Holland on foot as a solo officer if he reasonably believed that Mr. Holland was armed. A reasonable officer in Deputy Lopez's position would have ceased the foot pursuit after the first time that Holland stated, "I will shoot" or words to that effect, and would have set up a perimeter. There are no objective facts to support Deputy Lopez's alleged belief that Mr. |

Holland would have posed an immediate threat of death or serious bodily injury to the community if Deputy Lopez let Mr. Holland continue to run and set up a perimeter to contain and search for Mr. Holland. Clark Decl. at ¶ 13.

During the foot pursuit, Holland was generally running away from Lopez, and it was Lopez's impression that Holland was trying to get away from him. "Ex. 1" (Lopez Depo.) at 50:20-51:5; "Ex. 4" (Sanchez Depo.) at 33:5-9.

Holland was not running directly toward any neighborhood, and he made no threats to harm any civilian. Clark Decl. at ¶ 13.

When Holland said, " I will shoot you," he was running away from Lopez. "Ex. 1" (Lopez Depo.) at 33:22-24.

When Lopez fired his shots, Holland was still moving away from Lopez. "Ex. 1" (Lopez Depo.) at 46:4-12.

Lopez never saw Holland in a shooting stance. "Ex. 1" (Lopez Depo.) at 59:3-5.

| | | | | Holland never extended his right arm towards Lopez. "Ex. 1" (Lopez Depo.) at 58:10-13.

Holland was never directly facing Lopez immediately before or during the shots. "Ex. 1" (Lopez Depo.) at 58:12-24.

Lopez never specifically identified a gun in Holland's hand or on his person at any time before or during the shooting. "Ex. 1" (Lopez Depo.) at 14:9-19, 15:6-15.

Assuming Holland had the cell phone in his hand, a reasonable officer would have been able to distinguish a cell phone from a firearm. A cell phone does not have the identifying features of a firearm such as a barrel, trigger, trigger guard, grip, or magazine. Clark Decl. at ¶ 14.

Holland never told Lopez that he had a gun. "Ex. 1" (Lopez Depo.) at 16:15-17, 16:22-24, 48:12-17.

Lopez never communicated over his police radio that he thought Holland had a gun. "Ex. 1" (Lopez |

| | | | |
|---|---|---|---|
| | | | Depo.) at 68:6-11; "Ex. 2" (Hillebrand Depo.) at 16:22-25; "Ex. 4" (Sanchez Depo.) at 34:10-13, 54:3-6.<br><br>After the shooting, Deputy Hillebrand asked Lopez, "Do we have a gun?" or "Did he have a gun?" and Lopez responded that he did not know. Def. Ex. "E" (Lopez Audio) at 6:10-6:20; "Ex. 1" (Lopez Depo.) at 63:4-15; "Ex. 2" (Hillebrand Depo.) at 23:24-24:1, 25:9-11; "Ex. 3" (Rios Depo.) at 21:24-22:1, 23:17-22; "Ex. 4" (Sanchez Depo.) at 55:16-20; "Ex. 5" (Lopez Belt Recording) at 6:25-7:2. |
| **31.** | Lastly, Deputy Lopez did not draw his weapon until after Holland yelled "I will shoot you" and reasonably believed that Holland had a gun based upon the way Holland was holding his waistband. | Lopez Depo. (Ex. "A") at 28:16-21, 37:20-28:2, 7-9, 39:9-15, 42:9-13, 48:15-18. | Disputed that Lopez believed Holland had a gun, and assuming he did, disputed that Deputy Lopez's belief that Holland had a gun was reasonable.<br><br>Assuming Holland had the cell phone in his hand, a reasonable officer would have been able to distinguish a cell phone from a firearm. A cell phone does not have the identifying features of a firearm such as a barrel, trigger, trigger guard, grip, or magazine. Clark Decl. at ¶ 14. |

During the first nine times that Holland stated "I will shoot you," or words to that effect, Lopez did not see an object in Holland's hand, and it did not appear to Lopez that Holland was turning toward Lopez to shoot him. "Ex. 1" (Lopez Depo.) at 41:5-42:2, 42:17-23.

Lopez never specifically identified a gun in Holland's hand or on his person at any time before or during the shooting. "Ex. 1" (Lopez Depo.) at 14:9-19, 15:6-15.

Holland never told Lopez that he had a gun. "Ex. 1" (Lopez Depo.) at 16:15-17, 16:22-24, 48:12-17.

Lopez never communicated over his police radio that he thought Holland had a gun. "Ex. 1" (Lopez Depo.) at 68:6-11; "Ex. 2" (Hillebrand Depo.) at 16:22-25; "Ex. 4" (Sanchez Depo.) at 34:10-13, 54:3-6.

Lopez never told Holland to "drop it." "Ex. 1" (Lopez Depo.) at 45:3-4.

When Holland said, " I will shoot you," he was

running away from Lopez. "Ex. 1" (Lopez Depo.) at 33:22-24.

When Lopez fired his shots, Holland was still moving away from Lopez. "Ex. 1" (Lopez Depo.) at 46:4-12.

Lopez never saw Holland in a shooting stance. "Ex. 1" (Lopez Depo.) at 59:3-5.

Holland never extended his right arm towards Lopez. "Ex. 1" (Lopez Depo.) at 58:10-13.

Lopez did not see where the object was during the time that he was firing his shots. "Ex. 1" (Lopez Depo.) at 45:23-25.

After the shooting, Deputy Hillebrand asked Lopez, "Do we have a gun?" and Lopez responded that he did not know. "Ex. 1" (Lopez Depo.) at 63:4-15; "Ex. 2" (Hillebrand Depo.) at 23:24-24:1, 25:9-11; "Ex. 3" (Rios Depo.) at 21:24-22:1, 23:17-22; "Ex. 4" (Sanchez Depo.) at 55:16-20; "Ex. 5" (Lopez Belt Recording) at 6:25-7:2.

| No. | Plaintiffs' Additional Uncontroverted Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| **Background Information** | | |
| **32.** | Lopez was not responding to a serious or violent crime. | "Ex. 1" (Lopez Depo.) at 17:5-19, 19:12-15, 20:5-11, 20:16-23; "Ex. 4" (Sanchez Depo.) at 19:6-15, 19:25-20:5. |
| **33.** | At the time of the shooting, Lopez had no information that Holland had a criminal record and no information that he had ever committed an act of violence against another person. | "Ex. 1" (Lopez Depo.) at 49:8-13; "Ex. 4" (Sanchez Depo.) at 21:13-20. |
| **34.** | Lopez had no information that there were any weapons in the car, and he did not see any weapons in the car when he was at the passenger side of the car. | "Ex. 1" (Lopez Depo.) at 24:22-24; "Ex. 4" (Sanchez Depo.) at 21:6-12, 24:13-16. |
| **35.** | When Lopez was at the passenger side of the car, neither occupant of the car threatened to harm Lopez. | "Ex. 1" (Lopez Depo.) at 26:8-14. |
| **36.** | The driver, Robert Hanson, observed a black cell phone in Holland's hand when Holland ran from the vehicle. | "Ex. 4" (Sanchez Depo.) at 43:16-20. |
| **37.** | Holland was unarmed during this incident. | "Ex. 1" (Lopez Depo.) at 53:11-54:9; "Ex. 2" (Hillebrand Depo.) at 30:4-16; "Ex. 3" (Rios Depo.) at 20:15-20. |
| **38.** | Defendants' police practices expert agrees that there would have been no justification to use deadly force against Holland prior to Holland exiting the car. | "Ex. 4" (Sanchez Depo.) at 25:7-13. |
| **The Shooting** | | |
| **39.** | Lopez pursued Holland on foot as a solo officer. | "Ex. 1" (Lopez Depo.) at 31:9-10. |

| 40. | During the foot pursuit, Holland was generally running away from Lopez, and it was Lopez's impression that Holland was trying to get away from him. | "Ex. 1" (Lopez Depo.) at 50:20-51:5; "Ex. 4" (Sanchez Depo.) at 33:5-9. |
|---|---|---|
| 41. | When Lopez pursued Holland with his gun in his hand, Holland looked back at Lopez. | "Ex. 1" (Lopez Depo.) at 40:8-10. |
| 42. | When Holland said, " I will shoot you" various times, he was running away from Lopez. | "Ex. 1" (Lopez Depo.) at 33:22-24. |
| 43. | When Holland was running from Lopez, his back was generally toward Lopez. | "Ex. 1" (Lopez Depo.) at 37:1-10. |
| 44. | During the foot pursuit, the distance between Lopez and Holland was approximately ten yards. | "Ex. 1" (Lopez Depo.) at 37:8-10. |
| 45. | Lopez was illuminating Holland with his flashlight as he ran after him. | "Ex. 1" (Lopez Depo.) at 38:12-14. |
| 46. | During the first nine times that Holland stated "I will shoot" or "I will shoot you," Lopez did not see an object in Holland's hand, and it did not appear to Lopez that Holland was turning toward Lopez to shoot him. | "Ex. 1" (Lopez Depo.) at 41:5-42:2, 42:17-23. |
| 47. | After Holland said, "I will shoot" or "I will shoot you" the first time, Lopez did not seek cover and did not tactically distance himself. | "Ex. 1" (Lopez Depo.) at 51:23-25, 67:8-22. |
| 48. | When Holland said, "I will shoot you" for the last time, he was still running away from Lopez, and Lopez was still generally looking at Holland's back. | "Ex. 1" (Lopez Depo.) at 43:5-21; "Ex. 4" (Sanchez Depo.) at 38:2-5. |

| | | |
|---|---|---|
| **49.** | Lopez fired six shots at Holland. | "Ex. 1" (Lopez Depo.) at 12:22-13:1. |
| **50.** | When Lopez fired his shots, the distance between Lopez and Holland was approximately 25 feet. | "Ex. 1" (Lopez Depo.) at 14:6-8. |
| **51.** | When Lopez fired his shots, Holland was still moving away from Lopez. | "Ex. 1" (Lopez Depo.) at 46:4-12. |
| **52.** | Holland never extended his right arm towards Lopez. | "Ex. 1" (Lopez Depo.) at 58:10-13. |
| **53.** | Holland was never directly facing Lopez immediately before or during the shots. | "Ex. 1" (Lopez Depo.) at 58:12-24. |
| **54.** | Lopez never saw Holland in a shooting stance. | "Ex. 1" (Lopez Depo.) at 59:3-5. |
| **55.** | Lopez never specifically identified a gun in Holland's hand or on his person at any time before or during the shooting. | "Ex. 1" (Lopez Depo.) at 14:9-19, 15:6-15. |
| **56.** | Holland never told Lopez that he had a gun. | "Ex. 1" (Lopez Depo.) at 16:15-17, 16:22-24, 48:12-17. |
| **57.** | Lopez never communicated over his police radio that he thought Holland had a gun. | "Ex. 1" (Lopez Depo.) at 68:6-11; "Ex. 2" (Hillebrand Depo.) at 16:22-25; "Ex. 4" (Sanchez Depo.) at 34:10-13, 54:3-6. |
| **58.** | Lopez never told Holland to "drop it." | "Ex. 1" (Lopez Depo.) at 45:3-4. |
| **59.** | Lopez never gave Holland a verbal warning that he was going to shoot him. | "Ex. 1" (Lopez Depo.) at 42:14-16. |
| **60.** | Lopez alleges he saw the object in Holland's hand for approximately a fraction of a second before he fired his shots. | "Ex. 1" (Lopez Depo.) at 46:1-3. |
| **61.** | Lopez did not see where the object was during the time that he was firing his shots. | "Ex. 1" (Lopez Depo.) at 45:23-25. |

| 62. | At the time of the shooting, Lopez anticipated that backup officers were on the way. | "Ex. 1" (Lopez Depo.) at 66:20-67:3; "Ex. 2" (Hillebrand Depo.) at 13:17-22, 14:10-13. |
|---|---|---|
| 63. | One shot struck Holland in the upper left buttock and one shot struck him on the back of his left thigh. | 4" (Sanchez Depo.) at 51:19-52:13; Clark Decl. at ¶ 15. |
| **After the Shooting** | | |
| 64. | Deputy Hillebrand arrived within approximately 60 seconds after hearing Lopez's broadcast that he had "one running." | "Ex. 1" (Lopez Depo.) at 66:25-67:3; "Ex. 2" (Hillebrand Depo.) at 15:11-14. |
| 65. | Sgt. Rios arrived on scene approximately 30 seconds after Deputy Hillebrand arrived on scene. | "Ex. 2" (Hillebrand Depo.) at 31:3-6. |
| 66. | After the shooting, Deputy Hillebrand asked Lopez, "Do we have a gun?" and Lopez responded that he did not know. | "Ex. 1" (Lopez Depo.) at 15:25-16:11, 16:22-17:2, 47:20-25; "Ex. 2" (Hillebrand Depo.) at 23:5-12, 25:1-4; "Ex. 4" (Sanchez Depo.) at 55:5-15. |
| 67. | When Lopez was on scene after the shooting, Lopez did not state that he saw a gun or that Holland had a gun. | "Ex. 1" (Lopez Depo.) at 63:4-15; "Ex. 2" (Hillebrand Depo.) at 23:24-24:1, 25:9-11; "Ex. 3" (Rios Depo.) at 21:24-22:1, 23:17-22; "Ex. 4" (Sanchez Depo.) at 55:16-20; "Ex. 5" (Lopez Belt Recording) at pages 6-9. |
| 68. | When Lopez was on scene after the shooting, Lopez did not tell responding officers to look for a gun. | "Ex. 2" (Hillebrand Depo.) at 24:1-8; "Ex. 3" (Rios Depo.) at 22:2-12; "Ex. 5" (Lopez Belt Recording) at pages 6-9. |
| 69. | When Lopez was on scene after the shooting, Lopez did not tell responding officers that Holland had turned toward him. | "Ex. 2" (Hillebrand Depo.) at 25:16-19; "Ex. 3" (Rios Depo.) at 23:9-22; "Ex. 5" (Lopez Belt Recording) at pages 6-9. |
| 70. | After the shooting, no gun was found on the ground or around Holland's body. | "Ex. 1" (Lopez Depo.) at 53:11-54:9; "Ex. 2" (Hillebrand Depo.) at 30:4-16. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| 71. | After the shooting, Lopez agreed that the cell phone did not look like a gun. | "Ex. 1" (Lopez Depo.) at 62:9-21; "Ex. 4" (Sanchez Depo.) at 56:16-19. |
|---|---|---|
| 72. | Lopez did not give a recorded interview to law enforcement after the shooting. | "Ex. 1" (Lopez Depo.) at 7:3-5, 8:6-17, 66:4-5. |
| 73. | The first documented time Lopez stated that Holland turned toward him was at his deposition. | "Ex. 1" (Lopez Depo.) at 7:3-5, 8:6-17, 66:4-5; "Ex. 2" (Hillebrand Depo.) at 25:16-19; "Ex. 3" (Rios Depo.) at 23:9-22; "Ex. 4" (Sanchez Depo.) at 42:18-43:12. |
| | **Police Training and Standards on the Use of Deadly Force** | |
| 74. | Police officers, including Lopez, are trained that deadly force should only be used when there is an imminent or immediate threat of death or serious bodily injury. | Clark Decl. at ¶¶10a, 12; "Ex. 1" (Lopez Depo.) at 64:5-12; "Ex. 3" (Rios Depo.) at 27:2-6; "Ex. 4" (Sanchez Depo.) at 13:23-14:6. |
| 75. | A threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed. | Clark Decl. at ¶10b; California Penal Code Section 835a(e)(2). |
| 76. | Police officers are trained that potential threat or potential | "Ex. 4" (Sanchez Depo.) at 14:7-12. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | deadly threat is not enough to justify the use of deadly force. | |
|---|---|---|---|
| 77. | | Police officers are trained, and Peace Officer Standards and Training ("POST") instructs, that a fear of future harm is insufficient to use deadly force. | "Ex. 4" (Sanchez Depo.) at 18:15-18. |
| 78. | | Police officers, including Lopez, are trained that deadly force should only be used when there are no other reasonable options. | Clark Decl. at ¶10h; "Ex. 1" (Lopez Depo.) at 64:13-15 |
| 79. | | Police officers, including Lopez, are trained to give a verbal warning before using deadly force, when feasible. | Clark Decl. at ¶10g; "Ex. 1" (Lopez Depo.) at 64:16-18; "Ex. 4" (Sanchez Depo.) at 14:19-21. |
| 80. | | Police officers, including Lopez, are trained that they are responsible to justify each shot when using deadly force. | Clark Decl. at ¶10i; "Ex. 1" (Lopez Depo.) at 64:19-21; "Ex. 4" (Sanchez Depo.) at 14:22-24. |
| 81. | | A peace officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary to defend against an imminent threat of death or serious bodily injury to the officer or to another person. | Clark Decl. at ¶10a; California Penal Code Section 835a(c)(1)(A); LD 20: Chapter 4—Deadly Force, page 4. |
| 82. | | Under the facts of this case, Deputy Lopez could not justify using deadly force against Holland simply because Holland was running away. | Clark Decl. at ¶¶11, 12; "Ex. 4" (Sanchez Depo.) at 26:1-24, 27:5-11, 33:10-20. |
| 83. | | Under the facts of this case, Holland's statement, "I will shoot" or "I will shoot you" does not alone justify Lopez's use of deadly force. | "Ex. 4" (Sanchez Depo.) at 33:21-34:1; Clark Decl. at ¶12. |

-22-

| | | |
|---|---|---|
| 84. | Defendants' police practices expert agrees that it would have been inappropriate for Lopez to shoot Holland under the facts of this case if Holland had not turned toward Lopez with an object that looked like a gun in his hand. | "Ex. 4" (Sanchez Depo.) at 27:23-28:11, 38:18-22, 42:11-14, 46:4-12, 49:7-22. |
| 85. | A reasonable officer would have been able to distinguish a cell phone from a firearm. | Clark Decl. at ¶14; |
| 86. | A cell phone does not have the identifying features of a firearm such as a barrel, trigger, trigger guard, grip, or magazine. | Clark Decl. at ¶14; |
| 87. | Deputy Lopez engaged in pre-shooting misconduct negligent tactics, including: ignoring basic police training when he pursued Mr. Holland on foot as a solo officer; leaving the driver of the vehicle alone in the vehicle when he chased after Mr. Holland; failing to make clear communications over the police radio regarding the incident and failing to specifically request backup; failing to give Mr. Holland sufficient commands or a verbal warning that deadly force would be used, including not giving Mr. Holland a command to "drop it"; failing to seek cover or create distance while continuing to observe or monitor Mr. Holland. | Clark Decl. at ¶¶13, 16; |
| 88. | From the standpoint of police practices and basic police training, the use of deadly force | Clark Decl. at ¶17. |

by Deputy Lopez was contrary to P.O.S.T. and basic police officer training for the following reasons:

1. Mr. Holland posed no immediate threat of death or serious bodily injury.
2. Deputy Lopez could not shoot Mr. Holland for running.
3. Mr. Holland committed no crime involving the infliction of serious bodily injury or death.
4. Other reasonable alternative force measures were available.
5. Deputy Lopez failed to issue a verbal warning prior to using deadly force, as trained, even though it would have been feasible to do so under this set of facts.
6. Officers are trained that subjective fear is insufficient to justify a use of deadly force.
7. Officers are trained that fear of a potential future threat is insufficient.
8. The number of shots (6) was excessive.
9. Deputy Lopez overreacted, and officers are trained that an overreaction in using deadly force is a use of excessive force.

1

2   DATED: August 30, 2024          **LAW OFFICES OF DALE K. GALIPO**

3

4                                   By:  _/s/ Renee V. Masongsong_
                                         Dale K. Galipo, Esq.
5                                        Renee V. Masongsong, Esq.
                                         Attorneys for Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFFS' ADDITIONAL
MATERIAL FACTS