LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| A.H., et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>COUNTY OF SAN BERNARDINO and JUSTIN LOPEZ<br><br>　　　　　Defendants. | Case No.: 5:23-cv-01028-JGB-SHK<br><br>*Assigned to*:<br>Hon. District Judge Jesus G. Bernal<br>Hon. Mag. Judge Shashi H. Kewalramani<br><br>**DECLARATION OF ROGER CLARK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Plaintiffs' Memorandum of Points and Authorities; Response to Defendants' Statement of Genuine Disputes of Material Fact; Declaration of Renee V. Masongsong and Exhibits thereto]* |

# DECLARATION OF ROGER A. CLARK

I, Roger A. Clark, declare as follows:

1. I am an expert specializing in the procedures of police practices and proper police tactics, including proper procedures for the detention and arrest of individuals and the type and degree of force, if any, appropriate under different circumstances.

2. I am a competent adult and personally familiar with the facts contained herein and would and could competently testify thereto if called upon to do so.

3. My opinions are based in part on my training, professional experience, and education. I am a twenty-seven year veteran of the Los Angeles County Sheriff's Department. I was hired on December 1, 1965, and I retired from active service on March 31, 1993. My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant. I hold a California Peace Officer Standards and Training ("P.O.S.T.") Advanced Certificate, and I am a graduate of the P.O.S.T. Command College (class #5).

4. As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriff's Department's Patrol School which taught the P.O.S.T. accepted investigation and apprehension methods.

5. During my assignment as the Administrative Lieutenant of the Department's Reserve Forces Bureau, I supervised the training of cadets at our Reserve Training Academy. They were taught proper investigation, interview, and apprehension procedures. I also lectured the Reserve Academy on the P.O.S.T. syllabus: "The Legal and Moral Use of Force and Firearms."

6. During the last five and one-half years of my career, I commanded a specialized unit known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.), which was created to investigate, locate, observe and arrest major career) criminals. I held this position until my retirement from the Department on

March 31, 1993. The majority of our cases were homicide cases. Arrests frequently occurred in dynamic circumstances including crimes in progress.

7. As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported on the use of force and officer involved shootings.

8. Since my retirement, I have testified as an expert on jail procedures and jail administration, police procedures, police tactics, investigative procedures, shooting scene reconstruction, trajectory, use of force issues, and bullet casings in Arizona State Courts, California Courts, Washington State Courts and Federal Courts in California, Texas, Colorado, Illinois, Indiana, Pennsylvania, and Washington.

9. In forming my opinions regarding the June 21, 2022 fatal shooting of Shane Holland by San Bernardino Sheriff's Department Deputy Justin Lopez, I have reviewed the photographs, police reports, belt recording of Justin Lopez, deposition transcripts, and other related material prior to forming my opinions in this case.

10. At the time of this incident involving the shooting of Shane Holland on June 21, 2022, P.O.S.T., basic police officer training on deadly force, and California law surrounding deadly force included the following:

    a. A peace officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary to defend against an **imminent threat of death or serious bodily injury** to the officer or to another person. (Penal Code Section 835a(c)(1)(A); LD 20: Chapter 4—Deadly Force, page 4).

    b. A threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the **present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury** to the peace officer or another person.

-3-
DECLARATION OF ROGER CLARK

An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed. (Penal Code Section 835a(e)(2)).

c. <u>Totality of the Circumstances</u> means all facts known to the peace officer at the time, including the conduct of the officer and the subject leading up to the use of deadly force. (Penal Code Section 835a(e)(3)).

d. According to Penal Code Section 835a, fear alone does not justify the use of deadly force. An imminent harm is **not merely a fear of future harm**, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed.

e. As taught in P.O.S.T., courts have held the following: A simple statement of fear for the officer's safety is not enough; there must be objective factors to justify the officer's concern.  The use of deadly force must be objectively reasonable. The use of deadly force must be based on the facts and circumstances known to the officer at the time. (LD 20: Chapter 4—Use of Deadly Force, pages 7-8).

f. "Unreasonable fear" includes overreactions, and an overreaction in using deadly force can be a use of excessive force.  LD 20: Chapter 4—Use of Deadly Force, page 7).

g. The officer must give some warning prior to the use of deadly force, where feasible. (LD 20: Chapter 4—Use of Deadly Force, page 5).

      h. Another factor that may determine reasonableness in a use of force incident includes the availability of other objectively reasonable force options. (LD 20: Chapter 4—Use of Deadly Force, page 5).

      i. An officer must justify every shot he or she fires.

11. Under the facts of this case, Deputy Lopez could not justify using deadly force against Mr. Holland simply because Mr. Holland was running away. Mr. Holland did not injure anyone relative to this incident, and at the time of the shooting, he was unarmed. Further, Deputy Lopez failed to give Mr. Holland a verbal warning before using deadly force. At the time of this incident on June 21, 2022, P.O.S.T., Learning Domain 20, Chapter 4—Use of Deadly Force, set forth four requirements that would make it reasonable for an officer to use deadly force against a fleeing subject escaping on foot. None of the four requirements were met in this case. These four requirements are:

      a. ". . . if the subject threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction of serious bodily harm [or death] . . ."

      b. ". . . probable cause to believe that the subject poses a threat of death or serious physical harm, either to the officer or others . . ."

      c. ". . .probable cause to believe that the use of deadly force is reasonably necessary . . ." [to prevent escape]

      d. ". . . some warning be given prior to the use of deadly force where feasible. . ."

12. As explained above, police officers, including Deputy Lopez, are trained that they can only use deadly force in an immediate defense of life situation, in other words, when there is an immediate or imminent threat of death or serious bodily injury. There was no immediate defense of life situation when Deputy Lopez fired his six shots at Mr. Holland. Mr. Holland was unarmed at the time of the shooting. Deputy Lopez never saw a gun on Mr. Holland's person or in his hand.

1  Mr. Holland never stated that he had a gun. At the time of the shooting, Mr.
2  Holland was moving away from Deputy Lopez, and his back was generally toward
3  Deputy Lopez. At the time of the shooting, Deputy Lopez was approximately 25
4  feet away from Mr. Holland. It appeared to Deputy Lopez that Mr. Holland was
5  trying to get away from him. Mr. Holland never took a shooting stance and never
6  extended his arm. There were no civilians in the vicinity of the shooting. Under the
7  facts of this case, Deputy Lopez could not shoot Mr. Holland for running away or
8  for stating, "I will shoot you" or words to that effect. In order to justify shooting in
9  this case, Deputy Lopez would have to have identified a gun in Mr. Holland's hand
10 and seen that gun coming toward him, which was not the case here.

11      13. A reasonably well trained officer in Deputy Lopez's position would
12 not have continued to pursue Mr. Holland on foot as a solo officer if he reasonably
13 believed that Mr. Holland was armed. A reasonable officer in Deputy Lopez's
14 position would have ceased the foot pursuit after the first time that Holland stated, "I
15 will shoot" or words to that effect, and would have set up a perimeter. There are no
16 objective facts to support Deputy Lopez's alleged belief that Mr. Holland would
17 have posed an immediate threat of death or serious bodily injury to the community if
18 Deputy Lopez let Mr. Holland continue to run and set up a perimeter to contain and
19 search for Mr. Holland. For example, there was no information that Mr. Holland
20 had committed any crime involving injury or death, Mr. Holland was not running
21 directly toward any neighborhood, and he made no threats to harm any civilians.

22      14. Assuming that Holland had the cell phone in his hand, a reasonable
23 officer in Lopez's position would have been able to distinguish a cell phone from a
24 firearm. A cell phone does not have the identifying features of a firearm such as a
25 barrel, trigger, trigger guard, grip, or magazine.

26      15. The autopsy report in this case indicates that Mr. Holland suffered
27 shots to the buttocks and back of the left thigh.

28      16. Deputy Lopez engaged in pre-shooting misconduct and poor tactics in

-6-
DECLARATION OF ROGER CLARK

this case. For example, Deputy Lopez ignored basic police training when he pursued Mr. Holland on foot as a solo officer. Deputy Lopez left the driver of the vehicle, Robert Hanson, alone in the vehicle when he chased after Mr. Holland. Deputy Lopez failed to make clear communications over the police radio regarding the incident including failing to specifically request backup. Deputy Lopez also failed to give Mr. Holland sufficient commands or a verbal warning that deadly force would be used, including not giving Mr. Holland a command to "drop it." Lopez also failed to or seek cover create distance while continuing to observe Holland.

17. From the standpoint of police practices and basic police training, **the use of deadly force by Deputy Lopez was contrary to P.O.S.T. and basic police officer training**, including (but not limited to) for the following reasons:

a. Mr. Holland posed **no immediate threat of death or serious bodily injury** as explained above.

b. **Deputy Lopez could not shoot Mr. Holland for running** for the reasons explained above.

c. Mr. Holland committed **no crime involving the infliction of serious bodily injury or death.** Deputy Lopez was not responding to a violent or serious crime. Deputy Lopez had no information that Mr. Holland had injured anyone and no information that Mr. Holland had a firearm. Deputy Lopez had no information about Mr. Holland's criminal history at the time of the shooting.

d. **Other reasonable alternative force measures** were available, including giving a verbal warning before using deadly force, taking cover, setting up a perimeter, and/or waiting for backup.

e. **No verbal warning regarding deadly force**. Police officers are trained to give a verbal warning that deadly force will be used

when feasible. Deputy Lopez failed to issue a verbal warning prior to using deadly force, even though it would have been feasible to do so under this set of facts.

f. **Subjective fear is insufficient to justify a use of deadly force**. Basic police training requires that any use of deadly force must be based on an "objective" rather than "subjective" "reasonable necessity" of action to "imminent danger." In this case, the record does not support any objectively reasonable explanation that Mr. Holland posed an immediate threat of death or serious bodily injury at the time that any of the shots were fired.

g. **Fear of a potential future threat is insufficient.** Even if Deputy Lopez perceived that Mr. Holland posed a potential future threat, that is insufficient to justify his use of deadly force. In order to justify this shooting, Mr. Holland would have needed the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to Deputy Lopez or another person. Here, Mr. Holland was unarmed and running away.

h. **The number of shots was excessive**. Officers are trained to reassess when they are firing lethal shots. Here, Deputy Lopez fired six shots. Officers are trained that they are required to justify every shot they fire, and here, there is no justification for any of the shots.

i. **Deputy Lopez overreacted**, and officers are trained that an overreaction in using deadly force is a use of excessive force.

Executed on August 30, 2024, at Santee, California.

_____
Roger A. Clark