# EXHIBIT 2

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

```
1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3

4    A.H., et al,

5                    Plaintiffs

6         vs.                        Case No.: 5:23-cv-01028-JGB-SHK

7    COUNTY OF SAN BERNARDINO, JUSTIN
     LOPEZ, and DOES 1-10, inclusive,
8
                     Defendants
9    _____

10        AND ALL RELATED CROSS-ACTIONS.

11   _____

12

13            DEPOSITION OF KRISTOPHER HILLEBRAND

14                    June 25, 2024

15                     10:00 AM

16

17         REPORTED REMOTELY VIA TELECONFERENCE

18

19

20

21

22

23

24   REPORTED BY:
     ELIZABETH CHAE
25   CSR No. 14633
```

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 2

```
 1    APPEARANCES:

 2    For Plaintiffs:

 3              LAW OFFICES OF DALE K. GALIPO
                BY: RENEE V. MASONGSONG
 4              21800 Burbank Boulevard
                Suite 310
 5              Woodland Hills, CA
                91367
 6              818.347.3333
                rvalentine@galipolaw.com
 7

 8    For Defendants:

 9              MANNING & KASS
                ELLROD, RAMIREZ, TRESTER, LLP
10              BY:  KAYLEIGH ANDERSON, ESQ.
                801 S. Figueroa Street
11              15th Floor
                Los Angeles, CA
12              90017
                kayleigh.andersen@manningkass.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

```
 1                           INDEX

 2

 3   WITNESS:   KRISTOPHER HILLEBRAND

 4   EXAMINATION                                   PAGE

 5   BY RENEE MASONGSONG                              4

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 12

```
 1        A.  Yes, ma'am.

 2        Q.  And to your knowledge -- well, let me just ask,

 3   when were you first issued a body worn camera?

 4        A.  Not long ago.  I would estimate four months

 5   ago.

 6        Q.  Okay.  So I asked you earlier what time of day

 7   it was when you responded to the incident.  And I wanted

 8   to know, how did you first become aware of this

 9   incident?  Before you, before you responded at that

10   time?

11        A.  I heard -- all over the radio.

12        Q.  And were you at the station when you heard the

13   call over the radio?

14        A.  No.

15        Q.  Where were you when you first became aware of

16   this incident?

17        A.  I was in the area of Air Expressway and

18   Montezuma Street in the city of Adelanto.

19        Q.  Were you handling another call when you first

20   became aware of this incident?

21        A.  No.

22        Q.  Were you just generally on patrol?

23        A.  Yes.

24        Q.  And what was the nature of the call when you

25   first became aware of it?
```

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 13

1      A.  I believe it was put out as a traffic stop.

2      Q.  And at that time was it your understanding that

3   Deputy Lopez was responding to the incident?

4      A.  It was my understanding that he initiated a

5   traffic stop.

6      Q.  Okay.  And at some point did you hear Deputy

7   Lopez say something to the effect of, "one running"?

8      A.  Yes.

9      Q.  And is that something you heard over the radio?

10     A.  Yes.

11     Q.  And you were still in your vehicle at that

12  time?

13     A.  Yes, ma'am.

14     Q.  At some point did you assign yourself to this

15  call?

16     A.  Yes, ma'am.

17     Q.  And was there any specific reason that you

18  decided to respond to the call?

19     A.  Yes, ma'am.

20     Q.  And what was that reason?

21     A.  In order to provide assistance to my partner

22  because we ride in single man units.

23     Q.  Okay.  Was Deputy Lopez your assigned partner

24  on the date of the incident?

25     A.  No.  We don't really have assigned partners.

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 14

1   That's not really how it works for our department where

2   we work.

3       Q.  Okay.  Did you make any broadcast over the

4   radio indicating that you were responding to the

5   incident?

6       A.  I don't believe I broadcasted I was responding.

7   I believe I initiated it on my in-car computer and I

8   later broadcast other things.  But I don't think I ever

9   said over the radio that I was responding.

10      Q.  Okay.  But you did make some indication on your

11  police computer that you were responding to the call or

12  the incident?

13      A.  That's correct.

14      Q.  And how does that work, essentially?  Like,

15  would other officers in their car, if they look at a

16  computer screen in their car, see the note or indication

17  that you've made that you're responding?

18      A.  Yes, ma'am.  So basically, my in-car computer

19  has a message box on the bottom left-hand corner of the

20  screen where we can type in commands.  The command that

21  I would have used to show everybody else that I was

22  responding would be to the effect of AE and then the

23  call sign of the unit that I'm en route to help and then

24  hit enter.  And if it was me on that call showing me en

25  route to it.  So anybody that looks at that call can see

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

```
 1   what units are there and what units are en route.

 2        Q.  Okay.  Thank you for explaining.  At any point

 3   before you arrived on scene, did you either hear a radio

 4   broadcast or see a message on the computer screen

 5   indicating that any other officer was also responding to

 6   the incident?

 7        A.  I don't specifically remember if I saw other

 8   units.  Yeah, I don't remember.  I don't think I was

 9   paying attention if other units were responding.  I was

10   focused on responding there myself.

11        Q.  Okay.  And approximately how long did it take

12   you to get to the scene of the incident once you

13   assigned yourself to that call?

14        A.  I would estimate about 60 seconds.

15        Q.  Okay.  And at some point, did you hear Deputy

16   Lopez say over the radio that shots had been fired?

17        A.  Something to that effect, yes.

18        Q.  And do you recall how you received that

19   information?  Was it over the radio or was it on your

20   computer screen or both?

21        A.  I initially heard it over the radio, yes.

22        Q.  And when you heard that over the radio, were

23   you still in your vehicle traveling to the scene of the

24   incident?

25        A.  Yes.
```

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 16

1      Q.  And, just so I'm clear, did you hear Deputy

2  Lopez say something over the radio to the effect that

3  shots had been fired or did you actually hear shots

4  being fired on the radio?

5      A.  I heard Deputy Lopez say that shots had been

6  fired.  I did not hear any gunshots.

7      Q.  Okay.  That's what I figured.  I just want to

8  make sure I understood that correctly.

9      A.  Sure.

10      Q.  When you heard that communication over the

11  radio that shots had been fired, at that time, did you

12  have any understanding as to who had fired the shots?

13      A.  No.

14      Q.  And approximately how much time passed between

15  you hearing the communication that Deputy Lopez had one

16  running and you hearing the communication that shots had

17  been fired?

18      A.  Seconds.  I can't provide a really good

19  estimate on that.  It was a very short period of time.

20  Between when he said he was in a foot pursuit and the

21  first call of shots of fire came out was mere seconds.

22      Q.  Okay.  Before you arrived at the scene of the

23  incident, did you ever hear any information over the

24  radio that the subject had a gun?

25      A.  Not that I recall.

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 17

1      Q.  Have you ever received any training as a

2   sheriff's deputy that if you think a subject has a gun

3   you should broadcast that information over the radio?

4           KAYLEIGH ANDERSON:  Objection.  Incomplete.

5   Hypothetical, but you can answer.

6           THE WITNESS:  I'm sorry.  Can you repeat that?

7   BY RENEE MASONGSONG:

8      Q.  Yeah, sure.  Have you ever had any training as

9   a sheriff's deputy that if you think a subject has a gun

10  that you should broadcast that information over the

11  radio?

12          KAYLEIGH ANDERSON:  Same objection.  You can

13  answer.

14          THE WITNESS:  I don't remember specifically them

15  addressing that point in my training.  I remember being

16  trained to put out what we can, when we can.

17  BY RENEE MASONGSONG:

18      Q.  Okay.  Before you arrived at the scene of the

19  incident, did you ever learn any information about

20  Mr. Holland's criminal history?

21      A.  I don't remember hearing anything about

22  Mr. Holland's criminal history.

23      Q.  Other than what we've already discussed, the

24  communications of "one running," or words to that effect

25  and "shots fired," or words to that effect, did you hear

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 22

1    time?

2        A.  Sure.  He would have been lying in the roadway

3    of Cactus just west of Deputy Lopez and myself.

4        Q.  And what was the approximate distance between

5    Mr. Holland and Deputy Lopez at that time?

6        A.  I would say less than 5 feet.

7        Q.  And can you please describe Mr. Holland's body

8    position as far as you recall at that time?

9        A.  Sure.  He would have been lying facedown with

10   his head facing west and his feet facing east.

11       Q.  And I'm sorry if you already included this in

12   your answer, but was he face up or facedown?  I'm sorry

13   if I missed that.

14       A.  Oh, he was lying facedown.

15       Q.  And do you recall what he was wearing?

16       A.  I can't provide you with specific colors or

17   logos of his clothing, but I know he would have been

18   wearing a shirt and pants and shoes.

19       Q.  Okay.  Did you see any civilians in the

20   vicinity of Mr. Holland and Deputy Lopez at that time?

21       A.  No, not at that time.

22       Q.  Did you take your firearm out at some point?

23       A.  Yes, ma'am.

24       Q.  And when did you first take your firearm out?

25       A.  Upon exiting my patrol vehicle.

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 23

1    Q.  And what was the reason that you did that at

2    that time?

3    A.  Due to the nature of the call I was responding

4    to.

5    Q.  Did you say anything to Deputy Lopez when you

6    arrived?

7    A.  Yes, ma'am.

8    Q.  And what did you first say to Deputy Lopez when

9    you arrived?

10    A.  I don't remember the exact verbiage I used, but

11    it was something to the effect of, "Where's the gun or

12    is there a gun?"

13    Q.  Okay.  And what was the reason that you asked

14    him, "Is there a gun or where is the gun?"

15    A.  Due to the limited information that I had upon

16    arriving on scene.  I wanted to make sure that neither

17    one of us were in an imminent threat posed by somebody

18    who could have a gun still.

19    Q.  And before you asked Deputy Lopez, "Where's the

20    gun or is there a gun?"-- before you asked him that, did

21    you ever hear Deputy Lopez state that Mr. Holland had a

22    gun?

23    A.  I don't believe so.

24    Q.  When you were on scene, did Deputy Lopez ever

25    tell you that he saw a gun?

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 24

```
 1      A.  Not that I recall.
 2      Q.  When you were on scene, did Deputy Lopez ever
 3   tell say that he needed to find the gun?
 4      A.  Not that I remember.
 5      Q.  As far as you recall, when you were on scene,
 6   did Deputy Lopez ever tell anyone to look for a gun?  As
 7   far as whether you heard that?
 8      A.  I don't remember hearing that.
 9      Q.  When you were on scene, did you ever hear
10   Deputy Lopez say that Mr. Holland said he had a gun?
11      A.  That's not really a yes-or-no answer.  If I
12   could elaborate?
13      Q.  Sure.  What did Deputy Lopez say to you when
14   you were on scene after you asked him, "Where's the gun
15   or is there a gun?"
16      A.  So Deputy Lopez told me that Mr. Holland had
17   told him he was going to shoot him.  Meaning Mr. Holland
18   told Deputy Lopez that Mr. Holland was going to shoot
19   Deputy Lopez.
20      Q.  Okay.  Is that something that Deputy Lopez told
21   you in response to your question, "Where's the gun or is
22   there a gun?"
23      A.  I don't know if it was in response to it or if
24   it was just a spontaneous statement at the time.  It
25   could have been either.
```

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 25

1        Q.  Okay.  And do you recall when you asked him,

2    "Where's the gun or is there a gun?" he said, "I don't

3    know" or words to that effect?

4        A.  Yes.

5        Q.  And so I understand you're telling me Deputy

6    Lopez told you that Mr. Holland told him, "I'm going to

7    shoot you," or words to that effect; is that correct?

8        A.  Yes, ma'am.

9        Q.  Did Deputy Lopez ever tell you that Mr. Holland

10   said, "I have a gun," or words to that effect?

11       A.  I don't remember him saying that.

12       Q.  When you were on scene, did Deputy Lopez ever

13   tell you that Mr. Holland took a shooting stance?

14       A.  No.  Me and Deputy Lopez didn't have much of a

15   conversation on scene.

16       Q.  Okay, understood.  And just one last question

17   on that point, when you were on scene, did Deputy Lopez

18   ever tell you that Mr. Holland turned toward him?

19       A.  I don't remember.

20       Q.  Okay.  Did you observe Deputy Lopez handcuff

21   Mr. Holland?

22       A.  Yes.

23       Q.  And did you assist with the handcuffing it all?

24       A.  I assisted with pulling security on the subject

25   while he was being handcuffed.

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 30

1    than the visual search that you described?

2        A.  Yes.  I do know that deputies did conduct a

3    search of him.  I don't remember which deputy it was.

4        Q.  Okay.  Did you, yourself, ever observe any

5    weapons on Mr. Holland's person?

6        A.  No, ma'am.

7        Q.  Did you ever observe any weapons in the

8    vicinity of Mr. Holland, other than the deputies'

9    weapons?

10       A.  No, ma'am.

11       Q.  Do you know whether any weapons were found on

12   Mr. Holland's person after the shooting?

13       A.  I don't know, ma'am.

14       Q.  Did you observe a cell phone on the ground near

15   Mr. Holland?

16       A.  Yes, ma'am.

17       Q.  And where was that cell phone located in

18   relation to Mr. Holland, just in terms of when you

19   observed the cell phone and Mr. Holland?

20       A.  It would have been down by Mr. Holland's feet.

21   North of his -- where his body was laying.  Mostly on

22   the road and I think partially in the dirt roadway edge.

23       Q.  Did you see any other objects near Mr. Holland?

24       A.  Not that I recall.  Oh, actually, I'm sorry.  I

25   believe I saw a hat.

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 31

1      Q.  Okay.

2      A.  And also some fire cartridge casings.

3      Q.  Okay.  If you know, approximately how much time

4   passed between you arriving on scene and Sergeant Rios

5   arriving on scene?

6      A.  I would estimate 30 seconds.

7      Q.  Okay.  And was he the watch commander for the

8   shift?

9      A.  Yes, ma'am.

10      Q.  I want to ask you little bit about your

11   training.  During your career as a law enforcement

12   officer, have ever seen a suspect with the gun in his

13   hand?

14      A.  Yes, ma'am.

15      Q.  Have you had any training that a police officer

16   cannot justify shooting at a suspect just because he has

17   a gun in his hand, for that fact alone?

18      KAYLEIGH ANDERSON:  Objection.  Incomplete.

19   Hypothetical.  You can answer.

20      THE WITNESS:  Could you reword that I guess...

21   BY RENEE MASONGSONG:

22      Q.  Sure.  Let me ask it a different way.  Based on

23   your training, does a peace officer need an objectively

24   reasonable belief that a suspect poses an immediate

25   threat of death or serious bodily injury to justify

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 32

1   using deadly force?

2        A.   Yes.

3        Q.   So in other words, simply having a gun in the

4   hand is not enough.   There would need to be other

5   factors establishing an immediate threat of death or

6   serious bodily injury in order to justify shooting; is

7   that correct?

8             KAYLEIGH ANDERSON:   Objection.   Incomplete.

9   Hypothetical, but you can answer.

10            THE WITNESS:   I would have to know more

11  information in order to accurately answer that.

12  BY RENEE MASONGSONG:

13       Q.   Okay.   Have you ever deployed your firearm

14  against a suspect?

15       A.   By deployed, do you mean shoot?

16       Q.   Yes.

17       A.   No.

18       Q.   At any point when you were responding to this

19  incident, so like when you were driving over to the

20  scene, did you ever hear any information over the radio

21  that Mr. Holland had physically injured anybody?

22       A.   No.

23       Q.   Have you ever received any training on

24  distinguishing between a gun and a cell phone?

25       A.   Not specifically that scenario, I don't

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 33

1   believe.

2        Q.  Okay.  Have you been trained that a police

3   officer should give a verbal warning prior to using

4   deadly force when it is feasible to do so?

5        A.  When it is feasible and safe to do so.

6        Q.  Have you had any training with respect to foot

7   pursuits?

8        A.  Yes, ma'am.

9        Q.  Have you ever been trained that an officer

10  should not engage in a foot pursuit as a solo officer?

11       KAYLEIGH ANDERSON:  Objection.  Lacks foundation.

12  Incomplete.  Hypothetical, but you can answer.

13       THE WITNESS:  No.  That is not part of my

14  training.

15  BY RENEE MASONGSONG:

16       Q.  Have you ever had any training with respect to

17  working with a partner when initiating a foot pursuit?

18       KAYLEIGH ANDERSON:  Objection.  Vague and

19  ambiguous and incomplete.  Hypothetical, but you can

20  answer.

21       THE WITNESS:  No.  We've never been trained it's

22  a requirement to have a partner in order to engage in a

23  foot pursuit.

24  BY RENEE MASONGSONG:

25       Q.  Okay.  Do you know if a perimeter was ever set

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 35

1    Q.  And is it your understanding that the Taser can

2    be used against a suspect at a distance of up to

3    25 feet?

4    A.  That really depends on the cartridge.

5    Q.  What type of Taser did you have in your duty

6    belt on the day of this incident?

7    A.  That would have been the X2, I believe it's

8    called.

9    Q.  And just based on your training, what is the

10   approximate range at which that Taser can be effective

11   against a suspect?

12   A.  I believe their probes can reach up to 25 feet,

13   but that does not under any circumstance mean that it is

14   effective to that range.

15   Q.  To your knowledge, was anyone other than

16   Mr. Holland injured during this incident?

17   A.  Not that I know of.

18   Q.  Did you speak to some witnesses after this

19   shooting?

20   A.  I spoke to some people.  I don't know if you

21   would call them witnesses because they didn't actually

22   witness anything.

23   Q.  Okay.  That's a good clarification.  That was

24   going to be my next question.  Did you speak to anybody

25   who said they heard the shots?

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 38

1    concludes today.  Thank you so much for your time.

2             RENEE MASONGSONG:  Thanks, everyone, for your

3    patience.  Thank you, Deputy.  I hope you have a good rest

4    of your day.

5             THE WITNESS:  Thank you, ma'am.

6             (Deposition concluded at 10:45 AM.)

7             (Declaration under penalty of perjury on the

8    following page hereof.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A.H., ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.**
**Kristopher Hillebrand on 06/25/2024**

Page 39

```
1                              DECLARATION

2

3

4              I hereby declare I am the deponent in the within

5     matter; that I have read the foregoing deposition and know

6     the contents thereof; and I declare that the same is true

7     of my knowledge except as to the matters which are therein

8     stated upon my information or belief, and as to those

9     matters, I believe it to be true.

10             I declare under penalty of perjury in the State

11    of California that the foregoing is true and correct.

12             Executed on this _____ day of _____ 2024,

13    at _____, _____.

14        (City)                        (State)

15

16

17                         _____

18                         KRISTOPHER HILLEBRAND

19

20

21

22

23

24

25
```