Eugene P. Ramirez (State Bar No. 134865)
  *eugene.ramirez@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
  *kayleigh.andersen@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor,
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, COUNTY OF SAN BERNARDINO and JUSTIN LOPEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.H. and H.H., in each case a minor, by and through their guardian ad litem Crystal Hanson, individually and as successor in interest to Shane Holland, deceased; C.H., a minor, by and through her guardian ad litem, Reymi Updike; individually and as successor in interest to Shane Holland, deceased, and PATRICIA HOLLAND, individually,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO; JUSTIN LOPEZ, and DOES 1-10, Inclusive,<br><br>Defendants. | Case No. 5:23-CV-01028 JGB-SHK<br><br>*[Honorable Jesus G. Bernal, Magistrate Judge, Shashi H. Kewalramani]*<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     September 23, 2024<br>Time:    9:00 a.m.<br>Crtrm.:  Courtroom 1<br><br>*Action Filed:      06/02/2023* |

**TO THE COURT, PLAINTIFFS, AND THEIR ATTORNEYS OF RECORD:**

Defendants County of San Bernardino ("County") and Deputy Justin Lopez ("Deputy Lopez") (collectively "Defendants") hereby submit this Reply in Support of their Motion for Summary Judgment. As set forth in both the underlying motion and this Reply, Defendants submit that plaintiffs A.H. and H.H., in each case a minor, by

1
**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

and through their guardian ad litem Crystal Hanson, individually and as successor in interest to Shane Holland, deceased; C.H., a minor, by and through her guardian ad litem, Reymi Updike; individually and as successor in interest to Shane Holland, deceased, and PATRICIA HOLLAND, individually ("Plaintiffs") have failed to carry their burden of setting forth admissible evidence demonstrating that they are entitled to relief on any of their claims and, therefore, Defendants are entitled to judgment as a matter of law. Accordingly, Defendants respectfully request that their Motion for Summary Judgment be granted in its entirety.

DATED: September 12, 2024    **MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By:   /s/ *Kayleigh Andersen*
Eugene P. Ramirez
Kayleigh Andersen
Attorneys for Defendants, COUNTY OF SAN BERNARDINO and JUSTIN LOPEZ

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion for Summary Judgment [Doc. 37] ("Opposition") fails to carry their burden of setting forth admissible evidence demonstrating that they are entitled to relief on any of their claims and, therefore, Defendants' motion for summary judgment should be granted as to all claims.

## II. PLAINTIFFS' RELY ON NON-MATERIAL FACTS TO MANDUFACTURE A DISPUTE OF FACT

Plaintiffs' Opposition and Separate Statement of Genuine Disputes of Material Fact and Additional Material Facts [Docs. 37, 37-1] rely on non-material facts in an attempt to manufacture a dispute of fact.

In opposing a motion for summary judgment the opposing party must support its assertion that a material fact is genuinely disputed by (1) citing materials in the record, (2) showing the movant's materials are inadequate to establish an absence of genuine dispute, or (3) showing that the movant lacks admissible evidence to support its factual position. *See* Fed. R. Civ. P. 56(c)(1)(A)-(B). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Further, it is insufficient to merely show that there is some "metaphysical doubt as to material facts." *Matsushita Elec. v. Zenith Radio,* 475 U.S. 574, 576 (1986). The plaintiff must show the existence of a genuine issue and "produce at least some 'significant probative evidence tending to support the complaint.'" *Smolen v. Deloitte, Haskins & Sells,* 921 F.2d 959, 963 (9th Cir. 1990) (citations omitted).

In *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986), the Supreme court affirmed that, "as to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." (Internal citations omitted.)

Accordingly, the "materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes." *Anderson,* 477 U.S. at 248.

Here, Plaintiffs' Opposition and Separate Statement of Genuine Disputes of Material Fact and Additional Material Facts rely on non-material facts to manufacture a dispute of fact. However, these facts are not material to Plaintiffs' claims and thus are inappropriate and inadmissible for the subject motion. Importantly, the entire sequence of events leading up to the use of force and the moment the force is used is completely undisputed. Further, the only witness to the use of force is Deputy Lopez, and his testimony is not contradicted by any admissible evidence.

Accordingly, Defendants are entitled to summary judgment on each of Plaintiffs' claims.

### III. PLAINTIFFS HAVE NOT CARRIED THEIR BURDEN OF ESTABLISHING ANY VIABLE CLAIM

#### A. Deputy Lopez Used Objectively Reasonable Force As the Evidence Confirms that Holland Posed an Immediate Threat.

Plaintiffs' Opposition asserts that, along with other factors, summary judgment should be denied because Holland did not pose an immediate threat of death or serious bodily injury to any person at any point during this incident. [*See generally,* Opposition at 1:8-10, 7:18-22.] However, contrary to Plaintiffs' assertions, the uncontroverted evidence shows that Holland posed an ***immediate threat*** to the safety of Deputy Lopez and others.

Here, Deputy Lopez was conducting a traffic stop, and after making contact with the driver, Hanson, and the passenger, Holland, who identified himself as

Andrew Atkins, told the subjects he was going to his patrol vehicle to conduct a records check, then Holland got out of the vehicle and started fleeing from the traffic stop. [DUF 1, 2, 3, 7, 13.] Deputy Lopez saw Holland get out of the vehicle, told him to get back in the car, began running after him, and ***repeatedly commanded*** Holland to get on the ground. [DUF 13, 15.] Further, Deputy Lopez ***reasonably believed*** that Holland had something in his waistband, so he commanded Holland ***19 times*** to "Let me see your hands." [DUF 16, 18.] In response, Holland said ***"I will shoot you" 10 times***. [DUF 17, 19.] Immediately after Holland stated, "I will shoot you" ***the tenth time,*** Deputy Lopez fired his weapon six times in quick succession at Holland. [DUF 20.] Importantly, Deputy Lopez did not draw his weapon until after Holland yelled "I will shoot you" and ***reasonably believed*** that Holland had a gun based upon the way he was holding his hands at his waistband. [DUF 29, 31.]

Accordingly, Deputy Lopez repeatedly gave commands to Holland to show his hands and stop reaching towards his waistband, and ***Holland repeatedly shouted to Deputy Lopez that he would shoot him.*** Deputy Lopez perceived Holland as a ***deadly threat*** to himself and the residential neighborhood he was running towards and thus, the severity of the threat was quite high based solely on Holland's actions. [DUF 30.]

Lastly, Plaintiffs rely on Roger Clark's declaration to assert that "[a]ny fear that Lopez had was subjective, and officers are trained that a subjective fear is insufficient to justify using deadly force." [Opposition at 13:13-25.] However, leading case law establishes, where the uncontroverted objective evidence supports an officer's ***reasonable belief*** that the suspect posed an immediate risk of death or serious bodily injury to the officer or others, the officer is entitled to summary judgment because his responding use of force is deemed reasonable as a matter of law. *See, e.g., Labensky v. Cornwell*, 763 F. Supp. 2d 921, 922-25, 929 (S.D. Ohio 2010) ("To use force, actual danger need not threaten the officer or other officers; an officer need only have a reasonable perception of danger." Thus, "[a]n officer need not see a weapon to presume that a suspect may be reaching for or attempting to use a weapon.")

1    Accordingly, Deputy Lopez' use of force was justified in response to the
2    immediate deadly threat from Holland's actions.
3    Further, Plaintiffs' Opposition asserts that severity of the crime weighs in
4    Plaintiffs' favor. [*See generally*, Opposition at 12:23-26.] However, it is undisputed
5    that Holland *escalated* the traffic stop by getting out of the vehicle and running
6    towards the desert. [DUF 1, 2, 12, 13.] Further, when Deputy Lopez saw Holland
7    get out of the vehicle, he told him to get back in the car and repeatedly commanded
8    Holland to get on the ground. [DUF 13, 15.] Lastly, Deputy Lopez *reasonably*
9    *believed* that Holland had something in his waistband, so he commanded Holland 19
10   times to "Let me see your hands." [DUF 16, 18.] In response, Holland said "I will
11   shoot you" 10 times. [DUF 17, 19.] Immediately after Holland stated, "I will shoot
12   you" the tenth time, Deputy Lopez fired his weapon six times in quick succession at
13   Holland. [DUF 20.]
14   Accordingly, Holland violated California Penal Code Section 148(a)(1) when
15   he got out of the vehicle and started fleeing from the traffic stop and California Penal
16   Code Section 69(a) when he yelled "I will shoot you" 10 times to Deputy Lopez.
17   Further, the severity of the crime at issue, based upon what Deputy Lopez
18   reasonably believed at the moment the force was used, taking into account Holland's
19   verbal threats and his starting to turn with what Deputy Lopez believed was a gun in
20   his hand, would constitute assault with a deadly weapon and/or attempted murder of
21   a peace officer; both are violent felonies [*see* Cal. Pen. Code §§ 245(a)(1), 664,
22   187(a)].
23   Thus, the severity of the crime factor also supports that Deputy Lopez' actions
24   were objectively reasonable.
25   Accordingly, Deputy Lopez' use of force was justified in response to the
26   immediate deadly threat from Holland's actions, and Plaintiffs' force-based claims
27   must fail.
28

### B. There Is No Evidence that Deputy Lopez' Conduct "Shocks the Conscience."

As an initial matter, Deputy Lopez is entitled to judgment on Plaintiffs' Interference with Familial Relationship claim, because under the uncontroverted evidence, Deputy Lopez used only objectively reasonable force during the incident. *See Corales v. Bennett,* 567 F.3d 554, 569 n. 11 (9th Cir.2009) (If the court finds that "no underlying dependent constitutional deprivation" was demonstrated, the family relations substantive due process claim also must fail.).

Further, there is no evidence that Deputy Lopez acted with a purpose to harm unrelated to legitimate law enforcement objectives, such that his conduct "***shocks the conscience***." Rather, the uncontroverted evidence shows that Deputy Lopez had to make a snap decision in response to Holland's behavior and ***yelling 10 times*** that he was going to shoot Deputy Lopez, thus actual deliberation was not practical or feasible under the circumstances. There is no evidence that Deputy Lopez acted with a purpose to harm, such that his conduct "***shocks the conscience***." [DUF 13, 15, 16, 17, 18, 19, 20, 29, 30, 31.]

Accordingly, there is no evidence that Deputy Lopez acted with a purpose to harm, such that his conduct "***shocks the conscience.***" Accordingly, Plaintiffs' claim fails and should be dismissed with prejudice.

### C. Deputy Lopez is Entitled to Qualified Immunity.

Plaintiffs' Opposition asserts that "disputed issues of material fact preclude granting qualified immunity on summary judgment." [Opposition at 18:7-9.] However, as discussed above, this is not a case where there is a material question of fact, rather Plaintiffs' Opposition relies on non-material facts to support their assertions that there are facts and circumstances in dispute as to the incident. Importantly, the entire sequence of events leading up to the use of force and the moment the force is used is completely undisputed. Further, the only witness to the use of force is Deputy Lopez, and his testimony is not contradicted by any admissible

evidence.

Further, Plaintiffs' Opposition asserts that "viewing the facts in the light most favorable to Plaintiffs and taking all reasonable inferences therefrom, this case falls within the "obvious" as being a constitutional violation" and "the law was clearly established that Lopez could not use deadly force under these facts." [Opposition at 19:4-6, 26-27.] Specifically, Plaintiffs' Opposition relies on *Longoria v. Pinal Cnty.*, 873 F.3d 699 (9th Cir. 2017), *Cruz v. City of Anaheim,* 765 F.3d 1076 (9th Cir. 2014), and *A. K. H by & through Landeros v. City of Tustin,* 837 F.3d 1005 (9th Cir. 2016)to establish that the law was clearly established at the time of the incident.

However, the facts in *Longoria*, *Cruz,* and *A. K. H* are not ***specifically and substantially identical*** to the facts of the incident at issue which would have put Deputy Lopez on notice that his conduct was unconstitutional. *White v. Pauly*, 580 U.S. 73, 79 (2017) ("clearly established law" should not be defined "at a high level of generality" but must be "particularized" to the facts of the case); *see also Kisela v. Hughes*, 138 S. Ct. 1148, 1152-54 (2018).

In *Longoria,* the officer shot Longoria after a car chase had ended, the car was fully immobilized, he was surrounded by armed officers, and his erratic driving no longer posed any threat to bystanders, and it was known the officers that Longoria was not armed. *Longoria,* 873 F.3d at 705. Importantly, in addressing qualified immunity the court held that is the officer "reasonably perceived that Longoria posed a threat of serious physical harm to [the] officers, then he could have lawfully used deadly force. There is no dispute in this case about these propositions." *Id.* at 710.

In *Cruz*, there was a dispute of fact whether Cruz did in fact reach for his waistband. Thus the court held that the "jury would have to answer just one simple question: Did the police see Cruz reach for his waistband? If they did, they were entitled to shoot; if they didn't, they weren't." *Cruz,* 765 F.3d at 1079.

Lastly, in *A. K. H,* the officer performed an investigatory stop, and the suspect, Herrera had his right hand in his sweatshirt pocket, the officer commanded Herrera to

take his hand out of his pocket, and less than a second later, just as Herrera's hand came out of his pocket, the officer shot him, it was discovered that Herrera was unarmed, and the officer did not claim that he saw, or thought he saw, a weapon in Herrera's hand. *A. K. H*, 837 F.3d a 1012.

In contrast, in this case, Deputy Lopez **reasonably believed** that Holland was in possession of a gun, based on Holland's repeated statement "I will shoot you," Holland not removing his hands from his waistband and looking over his shoulder the whole pursuit, and the black object that Deputy Lopez observed in Holland's right hand at waist level. [DUF 16, 17, 19, 29, 30, 31.] Accordingly, Plaintiffs point to no prior precedent or case law with facts not **specifically and substantially identical** to the facts of the incident at issue.

Contrary to Plaintiffs' assertion, at the time of the incident, it was clearly established that the use of deadly force is reasonable if a suspect "poses a significant threat of death or serious physical injury to the officer or others." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014). These principles apply even when officers are reasonably mistaken about the nature of the threat. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001) ("Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of' an immediate threat, and "in those situations courts will not hold that they have violated the Constitution.")

### D. Plaintiffs' State Law Claims Fail.

As outlined above, Deputy Lopez' use of force was objectively reasonable under *Graham*, thus Deputy Lopez and the County are entitled to judgment on plaintiffs' redundant state law claims for battery, negligence, and violation of the Bane Act. *See Archibald v. Cty. of San Bernardino*, 2018 U.S. Dist. LEXIS 171243, at *22 (C.D. Cal. Oct. 2, 2018) (acknowledging that battery, negligence, and Bane Act claims are governed by the same inquiry that governs excessive force claims); *see also Strong v. State*, 201 Cal. App. 4th 1439, 1448 (2011) (Pursuant to Government Code § 815.2, "[A] public entity's liability hinges on the liability of its employee").

### 1. Pre Force Conduct

Plaintiffs' Opposition asserts that pre-force conduct and tactics should be considered for battery and negligence claims. [Opposition at 24:4-5.] However, regardless if pre-force/pre-seizure conduct is actionable for negligence claims only or battery claims as well, here, from the perspective of a reasonable peace officer under the totality of the circumstances known to Deputy Lopez at the time, there is no evidence showing that Deputy Lopez unreasonably provoked Holland. *See Hayes v. County of San Diego*, 57 Cal. 4th 622, 637-40 (2013) (an officers' pre-force tactical conduct may be actionable in negligence, even if the use of force itself is otherwise reasonable-at-law, <u>only if</u>: (1) from the perspective of a reasonable officer, the pre-force conduct is objectively unreasonable under the totality of the circumstances known to the defendant officer at the time; and (2) the pre-force conduct unreasonably provokes-causes the suspect to take the very action that the officer, in turn, relies upon to justify his subsequent use of force.)

Rather, the evidence shows that when Holland got out of the vehicle, Deputy Lopez told him to get back in the car, began running after him, and repeatedly commanded Holland to get on the ground to deescalate the situation. [DUF 13, 15.] Further, Deputy Lopez commanded Holland 19 times to "Let me see your hands," to which Holland responded "I will shoot you" 10 times, escalating the situation. [DUF 16, 17, 18, 19.] Importantly, Deputy Lopez engaged in a foot pursuit because he ***reasonably believed*** that Holland was an immediate danger to him as there was no cover because they were in the middle of the desert and to the public because Holland was running towards a residential neighborhood. [DUF 30.] Further, Deputy Lopez did not draw his weapon until after Holland, while holding his hand at his waistband, yelled "I will shoot you" multiple times and ***reasonably believed*** that Holland had a gun. [DUF 29, 31.]

Accordingly, there is no evidence that Deputy Lopez unreasonably provoked or caused Holland to yell at Deputy Lopez that he was going to shoot him, 10 times,

which in turn prompted Deputy Lopez to use the force at issue. Therefore, Deputy Lopez acted reasonably under the circumstances and his pre-force conduct was justified.

### 2. Violation of the Bane Act

Plaintiffs' Opposition asserts that "there are a number of facts that certainly establish that Lopez acted with reckless disregard for Holland's constitutional right to be free from excessive force." [Opposition at 25:16-18.] However, there is no evidence that Deputy Lopez specifically intended to deprive Holland of his constitutional rights. Rather, the evidence shows that when Holland got out of the vehicle, Deputy Lopez told him to get back in the car, began running after him, and repeatedly commanded Holland to get on the ground. [DUF 13, 15.] Further, Deputy Lopez reasonably believed that Holland had something in his waistband, so he commanded Holland 19 times to "Let me see your hands." [DUF 16, 18.] In response, Holland said "I will shoot you" 10 times. [DUF 17, 19.] Immediately after Holland stated, "I will shoot you" the tenth time, Deputy Lopez fired his weapon six times in quick succession at Holland. [DUF 20.] Importantly, Deputy Lopez did not draw his weapon until after Holland yelled "I will shoot you" and ***reasonably believed*** that Holland had a gun and perceived him as ***deadly threat*** to himself and the residential neighborhood he was running towards. [DUF 29, 30, 31.] Accordingly, there is no evidence that Deputy Lopez specifically intended to deprive Holland of his constitutional rights.

### E. Plaintiffs' Are Not Entitled To Punitive Damages.

Plaintiffs' Opposition states "[i]n light of the disputed issues of material fact bearing on the reasonableness of Lopez's use of deadly force, this Court cannot find that Plaintiffs are not entitled to punitive damages as a matter of law." [Opposition at 25:26-26:1.] However, in order to obtain punitive damages, Plaintiffs must prove that Deputy Lopez' actions ***were malicious, oppressive, or in reckless disregard of Holland's rights***. *Dang v. Cross*, 422 F.3d 800, 810 (9th Cir. 2005); *see also* 9th Cir.

11
**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Model Jury Instruction 5.5 (2018).

Plaintiff's Opposition fails to provide any admissible evidence that Deputy Lopez acted with malice, oppression, or reckless disregard toward Holland. Rather, the undisputed evidence shows that Holland escalated the traffic stop by getting out of the vehicle and running towards the desert, ignored Deputy Lopez' commands to get back in the car and to get on the ground. [DUF 1, 2, 12, 13, 15.] Further, Deputy Lopez reasonably believed that Holland had something in his waistband, so he commanded Holland **19 times to "Let me see your hands."** [DUF 16, 18.] In response, Holland said **"I will shoot you" 10 times**. [DUF 17, 19.] Immediately after Holland stated, "I will shoot you" the tenth time, Deputy Lopez fired his weapon six times in quick succession at Holland. [DUF 20.] Importantly, Deputy Lopez did not draw his weapon until after Holland yelled "I will shoot you" and ***reasonably believed*** that Holland had a gun and perceived him as ***deadly threat*** to himself and the residential neighborhood he was running towards. [DUF 29, 30, 31.]

As such, Deputy Lopez is entitled to the dismissal of Plaintiffs' punitive damages claim.

## IV.   CONCLUSION

In light of all of the foregoing, Defendants request that their motion for summary judgment be granted in its entirety.

DATED:  September 12, 2024        **MANNING & KASS**
                                  **ELLROD, RAMIREZ, TRESTER LLP**


                                  By:     /s/ *Kayleigh Andersen*
                                     Eugene P. Ramirez
                                     Kayleigh Andersen
                                     Attorneys for Defendants, COUNTY OF
                                     SAN BERNARDINO and JUSTIN LOPEZ

**L.R. 11-6.2. Certificate of Compliance**

The undersigned, counsel of record for Defendants, COUNTY OF SAN BERNARDINO and JUSTIN LOPEZ, certifies that this brief contains 3258 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 12, 2024

                                        /s/ *Kayleigh Andersen*
                                        Kayleigh A. Andersen

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**